OPINION
{¶ 1} Appellant, Terrance A. Ogletree, appeals the judgment entered by the Portage County Court of Common Pleas. Ogletree was sentenced to nine years in prison for his conviction for possession of crack cocaine.
 {¶ 2} Sergeant Carrozzi of the Portage County Sheriff's Office testified for the state. He stated that an investigation was conducted in the fall of 2004 concerning a residence on Court Street in Ravenna, Ohio. Specifically, a confidential informant was being used to conduct controlled buys of cocaine. Based on the information derived from the confidential informant and the accompanying surveillance, Detective Nicolino of the Portage County Sheriff's Office obtained a search warrant for the residence.
 {¶ 3} On November 17, 2004, Sergeant Carrozzi, Detective Nicolino, and several other officers executed the search warrant on the Court Street address. The officers broke down the door, and Ogletree was discovered inside the house. Ogletree was handcuffed, and the residence was secured. Ogletree's handcuffs were moved to the front, he was seated at the kitchen table, and the Miranda warnings were read to him.[1] Thereafter, Ogletree signed a document indicating he understood his Miranda
rights. After the document was signed, Detective Nicolino walked outside the residence with Ogletree. He informed Ogletree they had a valid search warrant. Then, he told Ogletree, that he "didn't want to tear his house apart, if there was anything in there to make it easy, let us know where it is." Ogletree told Detective Nicolino there was crack cocaine in the house and led the detective to one of the bedrooms. Inside the bedroom, Ogletree stated the crack cocaine was in the dresser drawer. In the drawer, Detective Nicolino found 28.59 grams of crack cocaine on a dinner plate.
 {¶ 4} The officers searched the remainder of the house pursuant to the search warrant. They seized several items, including: cash, numerous weapons, ammunition, a scale, handheld scanners, video cameras, and a monitor.
 {¶ 5} Ogletree was indicted on four counts of trafficking in cocaine, one count of possession of cocaine, and eight counts of having a weapon while under disability. The counts for having a weapon while under disability were severed from the other counts prior to trial and are not at issue in this matter. Ogletree pled not guilty to the drug charges against him.
 {¶ 6} Ogletree filed a motion to suppress any statements made to the officers. The trial court held a hearing on Ogletree's motion. Following the hearing, the trial court denied Ogletree's motion to suppress.
 {¶ 7} The matter proceeded to a jury trial. Following the state's case-in-chief, Ogletree moved for acquittal pursuant to Crim.R. 29 in relation to all the charges. The trial court granted Ogletree's motion as to Count 2 of the indictment. The trial court denied the motion with respect to the remaining counts of the indictment. Defense counsel presented numerous witnesses on behalf of Ogletree. After the defense rested, Ogletree renewed his Crim.R. 29 motion, which the trial court denied. Thereafter, the state presented a rebuttal witness.
 {¶ 8} The jury found Ogletree guilty of Count 5 of the indictment, possession of cocaine, in violation of 2925.11(A)(C)(4)(e), a first-degree felony. The jury could not reach a decision on Counts 1, 3, and 4 of the indictment, the remaining trafficking in cocaine charges, so the trial court declared a mistrial on those counts. Later, the trial court granted the state's motion to dismiss the trafficking counts. The trial court sentenced Ogletree to a nine-year prison term for his possession of cocaine conviction.
 {¶ 9} Ogletree raises six assignments of error. His first assignment of error is:
 {¶ 10} "The trial court erred when it allowed the prosecution to admit prejudicial testimony relating to weapons that were not related to the charges against him over appellant's objection."
 {¶ 11} Ogletree argues that since the having a weapon while under disability charges were severed, the trial court erred by admitting evidence about the firearms in this matter.
 {¶ 12} Evid.R. 403 provides, in part:
 {¶ 13} "(A) Exclusion mandatory
 {¶ 14} "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or of misleading the jury."
 {¶ 15} First, we note the prejudicial effect of evidence relating to a having a weapon under disability charge is vastly different than the prejudicial effect of the firearms themselves. By definition "under disability" necessarily means that the defendant has committed a previous crime. Thus, if the having a weapon while under disability charges were not severed, the state would be permitted to introduce evidence of Ogletree's prior crime. Thus, the admission of gun evidence is not nearly as prejudicial as the potential evidence concerning the prior offense.
 {¶ 16} We have previously held that evidence regarding firearms has some prejudicial effect in a criminal case.[2]
However, the firearm evidence also has probative value. "`Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.'"[3] Accordingly, the Fifth Appellate District held that evidence regarding firearms is probative when the defendant is charged with drug offenses.[4]
 {¶ 17} In this matter, the guns had probative value. Ogletree's residence contained video cameras connected to a monitor inside the residence and scanners. These items suggest Ogletree was concerned about police presence. The guns are relevant because they demonstrate that Ogletree knew he was conducting illegal activity and was concerned about a police raid.[5] Further, the evidence of the guns was relevant, because it corroborated Detective Nicolino's testimony about the execution of the search warrant. He testified that numerous officers surrounded the house and knocked the door in to gain entrance to the residence, because they were concerned about their safety due to information that Ogletree had guns.
 {¶ 18} The gun evidence had some probative value, as well as some prejudicial effect. In this matter, the danger of unfair prejudice was not substantially outweighed by the probative value of the firearms.
 {¶ 19} Ogletree's first assignment of error is without merit.
 {¶ 20} Ogletree's second assignment of error is:
 {¶ 21} "The trial court violated Evidence Rule 404(B) when it allowed testimony relating to other acts which were independent of, and unrelated to the offenses for which appellant was on trial."
 {¶ 22} The applicable authority on the admission of evidence of other acts is Evid.R. 404(B), which states:
 {¶ 23} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 24} Evidence of other acts under Evid.R. 404(B) is to be construed against admissibility.[6] This is because "[t]he average individual is prone to much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime."[7]
 {¶ 25} Ogletree contends the trial court improperly admitted evidence in violation of Evid.R. 404(B) during the cross-examination of Danelle Hilbrunner.
 {¶ 26} Ogletree asserts the state violated Evid.R. 404(B) when it elicited testimony from Hilbrunner that Ogletree drove without a license. As part of her alibi testimony, Hilbrunner testified that Ogletree drove her to a class at Cuyahoga Community College on some of the nights the alleged drug transactions occurred. During cross-examination, the assistant prosecutor asked about the driving situation. Hilbrunner responded that Ogletree did not have a driver's license when she was asked whether Ogletree had a car. She volunteered this answer. Thereafter, to summarize her testimony, the state asked her if Ogletree drove without a driver's license, and Hilbrunner answered in the affirmative.
 {¶ 27} Under an Evid.R. 404(B) analysis, this evidence of a crime was not offered to show that Ogletree acted in conformity with his prior actions when he committed the drug offenses. Rather, the evidence was offered to show whether Ogletree had an opportunity to drive Hilbrunner to class. Specifically, the evidence was elicited in the process of refuting Hilbrunner's alibi evidence, which asserted Ogletree was not at his residence at the time of one of the alleged controlled drug purchases. The admission of this evidence did not violate Evid.R. 404(B).
 {¶ 28} The driver's license evidence is also admissible under an Evid.R. 403(A) analysis. Evidence that Ogletree committed a crime by driving without a driver's license is prejudicial. However, when compared to the felony charges he was facing, driving without a license was a relatively minor offense. There was also probative value to the evidence. The fact that Ogletree did not have a license attacks the credibility of Hilbrunner's testimony that he drove her to class in Cuyahoga County. There was some probative value and some prejudice associated with the driver's license testimony. However, the probative value was not substantially outweighed by the prejudice.
 {¶ 29} The assistant prosecutor consistently asked Hilbrunner about the presence of blood in the kitchen. Presumably, the assistant prosecutor sought an answer from Hilbrunner that the blood in the kitchen was from dogfighting. This questioning was entirely inappropriate. While the trial court attempted to limit the prejudicial effect of this colloquy by excluding any references to dogfighting, the trial court may have made the situation worse. This is because the trial court ultimately permitted the assistant prosecutor to question Hilbrunner about the blood, but prohibited the state from asking Hilbrunner if the blood was from dogfighting. Defense counsel repeatedly asked Hilbrunner about the presence of blood "all over the walls" in the kitchen. While Hilbrunner denied seeing the blood, the inference was before the jury. The presence of blood, especially on a wall, infers that an act of violence occurred in that area. Moreover, since the trial court prohibited the blood from being classified as "dog" blood, the jury was left to wonder what type of blood it was. Was it dog blood, cow blood, or human blood? The vagueness of the questions left open the possibility that the blood could have been human blood, suggesting that Ogletree was involved in a serious crime against another person.
 {¶ 30} Under a 403(A) analysis, this testimony was offered to impeach Hilbrunner's testimony that the house was used for breeding dogs and her testimony that she was present during the execution of the search warrant. This matter was a drug case, not a dog abuse case. Whether the house was a drug house was relevant, whether the house was a dogfighting house was not. In this matter, the presence of the dogs was an entirely collateral matter. As such, the probative value of this testimony was extremely minimal. Moreover, the presence of blood was highly prejudicial. Blood splatters on the wall suggest that someone, or something, was violently injured in that area. The unfair prejudice associated with the blood evidence substantially outweighed its minimal probative value. Therefore, this evidence was improperly admitted under Evid.R. 403(A).
 {¶ 31} Even though the blood evidence was improperly admitted, we consider this to be harmless error.[8] It is with great caution we invoke the doctrine of harmless error. However, we believe this is an appropriate instance to do so. First, we note that the jury did not reach a decision on the trafficking charges, which were ultimately dismissed. This indicates that the jury was not tainted to the point it could not still engage in a fair weighing of the evidence. Second, there was overwhelming evidence of Ogletree's guilt on the possession of cocaine charge. After being asked, he led the officers directly to the location of the crack cocaine. This is the only crime he was convicted of in this trial.
 {¶ 32} Ogletree's second assignment of error is without merit.
 {¶ 33} Ogletree's third assignment of error is:
 {¶ 34} "The trial court erred in overruling defense counsel's [Crim.R. 29] motion. There was not sufficient evidence to convict the defendant-appellant on any of the charges at trial."
 {¶ 35} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction.[9]
When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[10]
 {¶ 36} The majority of Ogletree's sufficiency argument concerns his objections to the quality of the testimony of two of the state's witnesses. One of the witnesses was the confidential informant, the other was an acquaintance of Ogletree's, who testified against him as part of a plea agreement. Both of these individuals' testimony went primarily to the trafficking charges, which were ultimately dismissed.
 {¶ 37} Ogletree's only conviction for this trial was for possession of cocaine, in violation of R.C. 2925.11, which provides, in part:
 {¶ 38} "(A) No person shall knowingly obtain, possess, or use a controlled substance.
 {¶ 39} "* * *
 {¶ 40} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 41} "* * *
 {¶ 42} "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
 {¶ 43} "* * *
 {¶ 44} "(e) If the amount of the drug involved equals or exceeds five hundred grams but is less that one thousand grams of cocaine that is not crack cocaine or equals or exceeds twenty-five grams but is less than one hundred grams of crack cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."
 {¶ 45} The state presented sufficient evidence that drugs were found in Ogletree's residence. Detective Nicolino testified that, after waiving his Miranda rights, Ogletree told him there was crack cocaine in the house. Ogletree led the detective into a bedroom and indicated the crack was in the dresser. A substance believed to be crack cocaine was found in Ogletree's dresser drawer. In fact, Kenneth Ross of the Ohio Bureau of Criminal Identification and Investigation ("B.C.I.") testified that the substance found in Ogletree's dresser tested as 28.59 grams of crack cocaine.
 {¶ 46} Also, there was sufficient evidence presented that Ogletree "possessed" the crack cocaine. "Possession of drugs can be either actual or constructive."[11] Even if the contraband is not in a suspect's "immediate physical possession," he may still be found to be in constructive possession of the item, provided the evidence demonstrates that he "was able to exercise dominion and control over the controlled substance."[12] To prove constructive possession, "[i]t must also be shown that the [defendant] was conscious of the presence of the object."[13]
 {¶ 47} The Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'"[14] The Third Appellate District held constructive possession of contraband may be supported by circumstantial evidence alone.[15] Finally, a defendant may be convicted of possession of drugs if the contraband is found in his residence, even if it is not in the actual physical control of the defendant.[16] In this matter, Ogletree led the detectives directly to the crack cocaine and informed them it was in the dresser drawer. Accordingly, there was sufficient evidence that Ogletree exercised dominion and control over the drugs and, thus, was in constructive possession of them.
 {¶ 48} The state's evidence, when viewed in a light most favorable to the state, was sufficient for a reasonable person to prove all of the elements of possession of cocaine beyond a reasonable doubt.
 {¶ 49} The trial court did not err in overruling Ogletree's motion for acquittal in relation to the possession of cocaine charge.
 {¶ 50} Ogletree's third assignment of error is without merit.
 {¶ 51} Ogletree's fourth assignment of error is:
 {¶ 52} "The trial court erred in allowing a conviction that was against the manifest weight of the evidence."
 {¶ 53} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 54} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"[17]
 {¶ 55} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide.[18]
 {¶ 56} In this assignment of error, Ogletree argues that the jury's verdict was clouded by inadmissible evidence and untrustworthy witnesses for the state. Despite Ogletree's assertions, we do not believe the jury was overly distracted so as to not be able to fairly weigh the evidence. We note the jury could not reach a decision on the trafficking charges. This demonstrates the jury's cumulative ability to weigh the evidence and, if not convinced of Ogletree's guilt, to refrain from returning a guilty verdict.
 {¶ 57} Further, as previously noted, the jury had reliable evidence before it going to all the elements of the possession of cocaine charge. Presumably, the jury found this evidence credible.
 {¶ 58} The jury did not lose its way or create a manifest miscarriage of justice by returning a guilty verdict on the possession of cocaine charge.
 {¶ 59} Ogletree's fourth assignment of error is without merit.
 {¶ 60} Ogletree's fifth assignment of error is:
 {¶ 61} "Mr. Ogletree was denied his rights to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when defense counsel opened the door to prejudicial testimony."
 {¶ 62} Ogletree claims his trial counsel was ineffective for calling Hilbrunner to the stand and opening the door for potential other acts evidence. We disagree.
 {¶ 63} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance."[19]
 {¶ 64} The Supreme Court of Ohio has held that trial strategy decisions should not be second-guessed and that "`a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[20]
 {¶ 65} Ogletree's trial counsel employed the strategy of an alibi witness. Ogletree filed a notice of alibi. At trial, Hilbrunner testified that Ogletree was not present for some of the alleged sales, because he drove her to class. The testimony about Ogletree not having a driver's license occurred during this time. It could be argued that this strategy worked, in that the jury could not reach a decision on the trafficking charges and those charges were ultimately dismissed.
 {¶ 66} As to the blood evidence, we have already determined that this evidence was improper. Moreover, trial counsel continuously objected to this testimony.
 {¶ 67} Ogletree's trial counsel was not ineffective in his representation.
 {¶ 68} Ogletree's fifth assignment of error is without merit.
 {¶ 69} Ogletree's sixth assignment of error is:
 {¶ 70} "Appellant was denied his rights under the Fourth,Fifth, Sixth, and Fourteenth Amendments to the United States Constitution as well as Article One, Section Ten of the Ohio Constitution when the trial court overruled his motion to suppress."
 {¶ 71} "Appellate review of a motion to suppress presents a mixed question of law and fact."[21] The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence.[22] Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard.[23]
 {¶ 72} "`In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'"[24]
 {¶ 73} These same factors apply when determining if a defendant voluntarily waived his Miranda rights.[25]
 {¶ 74} Detective Nicolino testified at the suppression hearing. He stated Ogletree was cooperating during his arrest. After the house was secure, Ogletree's handcuffs were moved from the back to the front, and he sat at the kitchen table. There, Detective Nicolino read Ogletree his Miranda warnings. Ogletree signed a form with the Miranda warnings on it, indicating he understood the warnings. After the document was signed, Detective Nicolino went outside with Ogletree. This is when Ogletree was asked if there were any drugs in the house, to which he replied in the affirmative.
 {¶ 75} We do not consider Ogletree's statements to have been given involuntarily. He was informed of his Miranda rights and signed the form indicating he understood them. There was not a lengthy interrogation that led to the statements. At the time the statements were given, Ogletree was outside with Detective Nicolino, away from the other officers.
 {¶ 76} In his appellate brief, Ogletree argues that he was "in custody" when the statements were given. We agree. However, statements given during a custodial interrogation are admissible, provided the defendant voluntarily waives his Miranda rights and the statement is voluntary.[26] In this matter, Ogletree waived his Miranda rights by signing a document indicating he understood them and, then, answering Detective Nicolino's questions.
 {¶ 77} The trial court did not err by denying Ogletree's motion to suppress.
 {¶ 78} Ogletree's sixth assignment of error is without merit.
 {¶ 79} The judgment of the trial court is affirmed.
Ford, P.J., Rice, J., concur.
[1] See Miranda v. Arizona (1966), 384 U.S. 436.
[2] State v. McKinney, 11th Dist. No. 2000-L-210, 2002-Ohio-4360, at ¶ 30.
[3] State v. Smith (Mar. 16, 1992), 5th Dist. No. CA-8715, 1992 Ohio App. LEXIS 1461, at *6-7, quoting United States v.Weiner (C.A.2, 1976), 534 F.2d 15, 18.
[4] State v. Smith, 1992 Ohio App. LEXIS 1461, at *8.
[5] See, e.g., State v. Williams, 2d Dist. No. 20271,2005-Ohio-1597, at ¶ 62.
[6] State v. Lowe (1994), 69 Ohio St.3d 527, 530.
[7] State v. Hector (1969), 19 Ohio St.2d 167, 174-175.
[8] See State v. Brown, 100 Ohio St.3d 51, 2003-Ohio-5059, at ¶ 25.
[9] Crim.R. 29(A).
[10] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307.
[11] State v. Rollins, 3d Dist. No. 11-05-08, 2006-Ohio-1879, at ¶ 22, citing State v. Haynes (1971), 25 Ohio St.2d 264.
[12] State v. Lee, 11th Dist. No. 2002-T-0168,2004-Ohio-6954, at ¶ 41, citing State v. Wolery (1976),46 Ohio St.3d 316, 329.
[13] State v. Hankerson (1982), 70 Ohio St.2d 87, 91.
[14] State v. Biros (1997), 78 Ohio St.3d 426, 447, quotingState v. Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus.
[15] State v. Rollins, 2006-Ohio-1879, at ¶ 22, citing Statev. Jenks, 61 Ohio St.3d at 272-273.
[16] See State v. Pollard (Mar. 25, 1994), 11th Dist. No. 93-A-1767, 1994 Ohio App. LEXIS 1329, at *10-11 and State v.Brinson, 9th Dist. No. 22741, 2006-Ohio-154, at ¶ 11-15.
[17] (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
[18] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[19] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth in Stricklandv. Washington (1984), 466 U.S. 668.
[20] State v. Mason (1998), 82 Ohio St.3d 144, 157-158, quoting Strickland, 466 U.S. at 689.
[21] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
[22] Id., citing State v. Fanning (1982), 1 Ohio St.3d 19.
[23] Id., citing State v. McNamara (1997),124 Ohio App.3d 706.
[24] State v. Twyford (2002), 94 Ohio St.3d 340, 360, quotingState v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911.
[25] Id. citing State v. Green (2000), 90 Ohio St.3d 352,366.
[26] See, e.g., State v. Lyons, 11th Dist. No. 2004-T-0035,2005-Ohio-4649, at ¶ 19-24.