OPINION
{¶ 1} This case is submitted to this court on the record and the briefs of the parties. Appellant, James E. Trimble ("Trimble"), appeals the judgment entered by the Portage County Court of Common Pleas. The trial court dismissed Trimble's petition for postconviction relief.
 {¶ 2} In the fall of 2003, Trimble met Renee Bauer ("Bauer"). Thereafter, the two began a relationship. In 2004, Trimble and Bauer moved into a house together at 880 Sandy Lake Road. In addition, Bauer's seven-year-old son, Dakota Bauer *Page 2 
("Dakota"), lived in the residence. The residence was owned by Elizabeth Trimble Bresley ("Bresley"), who is Trimble's mother.
 {¶ 3} On the evening of January 21, 2005, Bresley called Trimble on his cell phone. During the conversation, the doorbell rang at Trimble's residence. Bresley heard Trimble tell Dakota that the pizza delivery man was at the door, and Trimble gave Dakota money to pay for the pizza. Trimble ended the phone call so he could eat the pizza.
 {¶ 4} Sometime after the phone call ended, Trimble went to the basement and retrieved an assault rifle from his locked gun cabinet. Then, he unlocked a separate ammunition cabinet and obtained bullets for the rifle. Trimble went back upstairs and encountered Bauer and Dakota in a bedroom. Trimble fired multiple shots at Bauer and Dakota. During this time, Bauer attempted to shield Dakota from the gunfire. Bauer was shot once in her head, 11 times in her back, and once in her right hand. Dakota received six gunshot wounds, including wounds to his face, torso, and hand. Some of the bullets that struck Dakota had traveled through Bauer's body. Both Bauer and Dakota died from their gunshot wounds.
 {¶ 5} After killing Bauer and Dakota, Trimble changed his clothes, dressing in camouflage attire with long underwear underneath. He left the residence with two firearms, an AR-15 assault rifle and a nine millimeter pistol. In addition, he had several hundred rounds of ammunition for the weapons. Trimble walked away from the residence and into the woods, where he spent several hours eluding the police and shooting the guns in the direction of the officers.
 {¶ 6} About an hour after her initial call to Trimble terminated, Bresley called Trimble again on his cell phone. During this call, Trimble told Bresley that he had shot *Page 3 
Bauer and Dakota. After receiving this information, Bresley called her other son, Arthur Trimble ("Arthur"), and informed him about Trimble's comment. Arthur immediately called Trimble's cell phone. Trimble told Arthur that he had killed Bauer and Dakota. Arthur contacted the Brimfield Township Police Department about his conversation with Trimble. Officers were sent to Trimble's residence, and Bauer's and Dakota's bodies were found in a bedroom of the house.
 {¶ 7} Steven Reichard lives on Ranfield Road in Brimfield Township. At approximately 9:00 p.m., Reichard heard a noise from the back of his property. He walked with his dog to the area of the noise to investigate. Reichard encountered an individual and told him to get off his property. The individual responded by telling Reichard to put his hands up, that he had a gun, and that he had killed two people. At that time, Reichard's mother came out of the house. The individual told Reichard and his mother that he would have to shoot them or at least take them hostage. Reichard responded that the individual could just turn and walk away. Eventually, the individual agreed and walked away from Reichard. After the individual left his property, Reichard called 9-1-1. Though Reichard could not identify the individual at trial, Trimble acknowledged the encounter in his statement to the police.
 {¶ 8} Shortly after 11:00 p.m., Trimble believed he was cornered by police officers. At that time, he was outside of a duplex on Ranfield Road. Trimble broke into the residence through a back patio door. While three individuals resided in the residence, only Sarah Positano, a 22-year-old Kent State University student, was home at that time. Trimble found Positano in her bed, and he ordered her to get up and call 9-1-1. *Page 4 
 {¶ 9} Positano placed a telephone call to 9-1-1. During this time, Trimble was instructing her to tell the dispatcher to keep the police officers away from the residence. At one point, Trimble talked directly to the dispatcher and told her he had a handgun pointed at Positano's head. Trimble warned that he had the trigger pulled and the hammer held back on the gun and that he would shoot Positano if the police shot him or attempted to enter the residence. Shortly after midnight, the 9-1-1 recording indicated that several gunshots were fired. In addition, Positano told the dispatcher that she had been shot. At that time, the 9-1-1 call ended.
 {¶ 10} At approximately 7:30 a.m. the following morning, the SWAT team dispersed tear gas into Positano's residence. Thereafter, officers entered the residence and found Positano's body. Trimble was arrested without further incident.
 {¶ 11} Trimble was charged with several offenses, including three counts of aggravated murder. Trimble pled not guilty to the charges, and a jury trial was held. The jury found Trimble guilty of the three aggravated murder counts, as well as other offenses. Following the jury's verdict, the matter proceeded to the sentencing phase. Trimble presented several witnesses in mitigation against the death penalty. The jury recommended the death penalty be imposed on all three counts of aggravated murder. The trial court adopted the jury's recommendation, sentencing Trimble to death by lethal injection on all three counts of aggravated murder. Additionally, the trial court sentenced Trimble on the remainder of his convictions. Trimble appealed his convictions and death sentences to the Supreme Court of Ohio. As of the release of this opinion, Trimble's direct appeal is still pending before the Supreme Court of Ohio.
 {¶ 12} On May 29, 2007, Trimble filed a petition for postconviction relief. The state filed a motion to dismiss Trimble's petition for postconviction relief or, in the *Page 5 
alternative, a motion for summary judgment. The trial court dismissed Trimble's petition for postconviction relief without a hearing.
 {¶ 13} Trimble also filed a motion for appropriation of funds for a positron emission tomography ("PET") scan. The trial court denied this motion.
 {¶ 14} Trimble has timely appealed the trial court's judgment entry denying his petition for postconviction relief. On appeal, he raises two assignments of error. We will address these assigned errors out of numerical order. Trimble's second assignment of error is:
 {¶ 15} "The trial court erred when it denied appellant's motion for appropriation of funds for a positron emission tomography scan."
 {¶ 16} This court his held that there is no constitutional right to expert assistance in a postconviction proceeding. State v. Jackson, 11th Dist. No. 2004-T-0089, 2006-Ohio-2651, at ¶ 24, citing State v.Williams (Oct. 16, 1998), 11th Dist. No. 97-T-0153, 1998 Ohio App. LEXIS 4884. In Jackson, this court observed that R.C. 2953.21(I) provides the statutory right to counsel for indigent defendants who have been sentenced to death in postconviction proceedings. Id. at ¶ 26. However, this court noted the difference between a constitutional right to counsel and a statutory right to counsel and held that a statutory right to counsel does not confer a right to the assistance of an expert. Id. at ¶ 27. Further, as the Tenth Appellate District has held, "[w]hile the statute explicitly provides for appointment of counsel in post-conviction proceedings when the petitioner has been sentenced to death, the statute nowhere provides a right to funding or appointment of expert witnesses or assistance in a postconviction petition." State v.Conway, 10th Dist. No. 05AP-550, 2006-Ohio-6219, at ¶ 15. (Citations omitted.) *Page 6 
 {¶ 17} Accordingly, since Trimble had no right to expert funding, the trial court did not err in denying his motion for public funding of a PET scan.
 {¶ 18} Moreover, even if Trimble could show that he had a constitutional right to funding for the PET scan, he has not shown a particularized need for such testing. In his affidavit, Dr. Robert Smith stated:
 {¶ 19} "Given Mr. Trimble's documented history of head trauma and methamphetamine use, the use of diagnostic neuro-imaging techniques, such as a quantitative MRI and/or PET scan, could have been helpful in documenting abnormalities in his brain structure and function."
 {¶ 20} The Supreme Court of Ohio has held that "due process requires that funds be approved `only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense.'" State v. Newton,108 Ohio St.3d 13, 2006-Ohio-81, at ¶ 73, quoting State v. Mason (1998),82 Ohio St.3d 144, syllabus. In State v. Newton, the Supreme Court of Ohio held that the trial court did not abuse its discretion by finding that the defendant did not make a particularized showing based on his expert's conclusion that certain tests, including a PET study, "might provide `potentially' useful information."[1] State v. Newton, at ¶ 72-73.
 {¶ 21} In this matter, Dr. Smith's statement that a PET scan "could have been helpful" does not meet Trimble's burden of demonstrating a particularized showing.
 {¶ 22} Trimble's second assignment of error is without merit.
 {¶ 23} Trimble's first assignment of error is: *Page 7 
 {¶ 24} "The trial court erred in dismissing Trimble's post-conviction petition when he presented sufficient operative facts to merit relief or, at a minimum, an evidentiary hearing."
 {¶ 25} Ohio's postconviction relief statute, R.C. 2953.21, provides, in part:
 {¶ 26} "(A)(1)(a) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
 {¶ 27} "* * *
 {¶ 28} "(C) The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
 {¶ 29} "* * * *Page 8 
 {¶ 30} "(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending."
 {¶ 31} "[T]he trial court is not required to conduct a hearing when a petition for postconviction relief is filed." State v. Ramos, 11th Dist. No. 2007-G-2794, 2008-Ohio-3738, at ¶ 28, citing State v. Allen (Sept. 23, 1994), 11th Dist. No. 93-L-123, 1994 Ohio App. LEXIS 4274, at *4. "As the court in the State v. Jackson case stated, `the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavit and the files and records of this cause.'" State v. Scheidel, 11th Dist. No. 2004-A-0055, 2006-Ohio-198, at ¶ 11, quoting State v. Jackson (1980),64 Ohio St.2d 107, 110. Regarding this inquiry, this court has held:
 {¶ 32} "For purposes of determining whether there are substantive grounds for postconviction relief that would warrant a hearing, it is generally accepted that affidavits presented in support of the petition should be accepted as true. * * * However, conclusory or self-serving affidavits presented by the petitioner in support of his claims, without more, will not satisfy the petitioner's evidentiary burden." State v.Pierce (1998), 127 Ohio App.3d 578, 586. (Internal citations omitted.)
 {¶ 33} A reviewing court uses an abuse of discretion standard of review when reviewing a trial court's determination on a petition for postconviction relief. State v. Gondor, 112 Ohio St.3d 377,2006-Ohio-6679, at ¶ 45. "`The term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" State v. White, 118 Ohio St.3d 12, 2008-Ohio-1623, at ¶ 46, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157. (Secondary citations omitted.) *Page 9 
 {¶ 34} Trimble raises a total of 11 individual claims for relief.[2]
 {¶ 35} In his first claim for relief, Trimble asserts "his trial counsel were ineffective for failing to investigate and present testimony about Appellant's good behavior in the Portage County Jail."
 {¶ 36} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth inStrickland v. Washington (1984), 466 U.S. 668. Moreover, "`a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed.'" Id. at 143, quotingStrickland, 466 U.S. at 697.
 {¶ 37} Trimble asserts trial counsel should have called Sergeant Gregory Johnson of the Portage County Sheriff's Office and introduced copies of transport logs prepared by Sergeant Johnson during the mitigation phase of his trial.
 {¶ 38} Trimble argues this evidence would have demonstrated that he could have adapted well to prison. Trimble attached transport logs prepared by Sergeant Johnson to his petition for postconviction relief. In the logs, Sergeant Johnson describes the conversations that took place between himself and Trimble. Sergeant Johnson reported *Page 10 
that Trimble showed remorse for the crimes, that he was polite, and that he disliked spending time in jail. Sergeant Johnson's log indicates the two of them often engaged in general conversation, discussing topics such as the weather, hunting and fishing, and Trimble's time in Texas.
 {¶ 39} In response, the state attached several additional documents, including: an investigative narrative prepared by Sergeant Johnson; two incident reports regarding Trimble's failure to change cells at the jail; an incident report regarding Trimble having water outside in the recreation yard; and a memorandum from Sergeant Johnson to Portage County Prosecutor Victor Vigluicci.
 {¶ 40} Some of these exhibits describe an incident in which Trimble was asked to change cells due to a lighting problem in his cell. According to the documents, Trimble refused to change cells, became angry, and called a female corrections officer a "bitch" when she asked him to move cells. Eventually, Sergeant Johnson was called to the area, and he was able to convince Trimble to move to the new cell.
 {¶ 41} In another incident, Trimble attempted to take a cup of water outside to the recreation yard. He was told by corrections officers that he was not permitted to do this. Trimble became upset about this rule and used the intercom system, which is reserved for emergencies only. Trimble was asked to return to his cell. Trimble refused several explicit directives to go to his cell, claiming he had 15 minutes of recreation time remaining. Ultimately, Trimble went into his cell and slammed the door.
 {¶ 42} Finally, Sergeant Johnson wrote a memorandum to Prosecutor Vigliucci regarding a transport of Trimble in July 2005. Johnson stated he repeatedly reminded Trimble that he was not supposed to talk to him about the case. However, Trimble commented about a letter he wrote to the judge, about using methamphetamine, about *Page 11 
knowing what he did was wrong, and about jail food. In addition, Sergeant Johnson told Trimble that he did not think he was "a monster."
 {¶ 43} The trial court held that since there was both favorable and unfavorable evidence regarding Trimble's behavior while in jail, his trial counsels' decision not to offer the favorable evidence was one of trial strategy. "The Supreme Court of Ohio has held that trial strategy decisions should not be second-guessed and that `"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."'" State v. Ogletree, 11th Dist. No. 2005-P-0040, 2006-Ohio-6107, at ¶ 64, quoting State v. Mason,82 Ohio St.3d at 157-158, quoting Strickland, 466 U.S. at 689.
 {¶ 44} On appeal, Trimble argues that any "`damaging' information would have been minimal compared to the favorable testimony that would have been presented by Sgt. Johnson." Essentially, Trimble is asking us to second-guess the trial-strategy decision of his trial counsel. We decline to do so.
 {¶ 45} The trial court did not abuse its discretion in finding that the decision not to call Sergeant Johnson or move to admit the transport logs was a trial-strategy decision and, thus, Trimble has not advanced a meritorious claim of ineffective assistance of counsel on this issue.
 {¶ 46} In addition, Trimble contends this evidence would have supported his theory that he committed the crimes in question as a result of being high on methamphetamine. He argues that Sergeant Johnson's statements indicate that, when sober, he is a calm, nonviolent person and, alternatively, that he only committed the crimes in question because he was under the influence of methamphetamine. *Page 12 
 {¶ 47} These issues were adequately presented to the jury. Through the testimony of Dr. Robert Smith and Dr. Jeffery Smalldon, Trimble's trial counsel presented evidence that he abused methamphetamine and that he was using methamphetamine and consuming alcohol on the night of the murders. Further, trial counsel called David Parnell, a former methamphetamine user, who described the effects of taking methamphetamines, which include paranoia and aggression. Also, trial counsel presented testimony from Bresley; Mark Brazle, Trimble's minister; and Aubrey Brice and Randell Cundiff, former employers of Trimble. Collectively, these witnesses testified that Trimble was a hard-worker who was willing to help people. Based on the totality of the mitigation evidence presented by trial counsel, the defense presented evidence that Trimble was normally a hard-worker and caring individual, that he had a methamphetamine addiction, that he was using methamphetamine on the night in question, and that methamphetamine use can cause paranoia and aggression. Accordingly, trial counsels' performance was not deficient for failing to use the testimony of Sergeant Johnson to develop these points.
 {¶ 48} The trial court did not abuse its discretion when it denied Trimble's first claim for relief.
 {¶ 49} In his second claim for relief, Trimble contends his trial counsel were ineffective for failing to "investigate, prepare and present" mitigation evidence at the penalty phase of his trial.
 {¶ 50} Trimble submitted the affidavits of Shirley Frazer, Anges Nemer, Betty Weichman, Tony Alexander, William Turner, Charles Dembeckie, Steve Rice, and Lloyd Bresley. He claims his trial counsel should have called these witnesses to testify at the mitigation phase of his trial. *Page 13 
 {¶ 51} In her affidavit, Frazer stated that she lived in the same neighborhood as Trimble's family. Also, she stated she was president of a homeowners association and referred any residents needing home repairs to Trimble. Finally, she stated that Trimble was trustworthy and polite, and that she felt safe around him.
 {¶ 52} Nemer stated that Trimble had performed home repairs at her home. In addition, she stated that she trusted Trimble, that he was polite, and that he was like a family member to her.
 {¶ 53} Weichmann met Trimble through his mother, Bresley. Trimble repaired Weichmann's sump pump and her roof. Weichmann stated she saw Trimble play ball with Dakota and noticed the two of them in church together.
 {¶ 54} Alexander stated he met Trimble when Trimble resided in Texas, through Trimble's work with the American Legion there. Alexander stated that Trimble made sure the legion hall's grass was mowed and he replaced windows at veterans' homes free of charge. Finally, he described Trimble as a "class guy."
 {¶ 55} Turner also knew Trimble from the American Legion in Texas. He stated that Trimble was always willing to help out and that he supported veterans. Moreover, he stated that he visited Trimble when Trimble was in jail in Texas, and Trimble told him as long as he was taking his medication, he was okay.
 {¶ 56} Dembeckie stated that he lived on the same street that Trimble did when they were teenagers. He stated Trimble grew marijuana plants in the woods. Also, he stated that Trimble's father was strict and would ask Trimble why he was not more like his brother.
 {¶ 57} Rice testified that he worked with Trimble at a truck stop in Texas. He stated that Trimble was the maintenance supervisor and "did a great job with work." He *Page 14 
stated that he would hunt with Trimble. Rice stated that his wife and Trimble's ex-wife used to be friends, but had a falling out, which caused his relationship with Trimble to end. He also stated that he had never seen Trimble angry.
 {¶ 58} Lloyd Bresley is married to Trimble's mother. He stated that Trimble was always helpful and assisted him with his move to Florida. Lloyd Bresley stated that Trimble was polite, easy to work with, and treated him like a family member. He stated Trimble and Dakota were close friends. He stated he believes that Trimble acted the way he did on the night in question because his "mind had to have gone haywire because of the drugs."
 {¶ 59} As the state notes, Trimble's trial counsel included the names of six of the eight witnesses on its witness list. This suggests that trial counsel was aware of these witnesses, but made a tactical decision not to call them during the mitigation phase of the trial. Further, the evidence that would have been presented by these witnesses was presented by other witnesses at trial. Many of the proposed witnesses would have testified about Trimble's work ethic and trustworthiness. Aubrey Brice and Randell Cundiff both testified that Trimble was a hard-worker and could be trusted. Some of the witnesses would have testified about Trimble's relationship with Dakota. Mark Brazle testified that Trimble and Dakota attended services at his church. Further, Trimble's mother, Bresley, testified that Trimble had a good relationship with Dakota.
 {¶ 60} In regard to the witnesses that were not on the witness list, Rice and Dembeckie, their testimony would have also been cumulative. Rice would have testified about Trimble's work ethic. As noted, trial counsel presented evidence of Trimble's reputation as a hard-worker through other witnesses. Dembeckie would have testified that Trimble's father was strict and that Trimble used marijuana in high school. Bresley *Page 15 
testified regarding Trimble's relationship with his father. Further, trial counsel presented significant evidence, through the testimony of Drs. Smith and Smalldon, about Trimble's history of drug abuse.
 {¶ 61} Since trial counsel presented evidence regarding all of the topics that these proposed witnesses would have testified to, trial counsels' performance was not deficient for failing to call these additional witnesses. Moreover, for the same reasons, Trimble has not demonstrated that he was prejudiced by trial counsels' failure to call these witnesses.
 {¶ 62} The trial court did not abuse its discretion by denying Trimble's second claim for relief.
 {¶ 63} In his third claim for relief, Trimble contends his trial counsel were ineffective for failing to present evidence regarding the "stormy relationship" between himself and Bauer and of Bauer's "assaultive behavior." Trimble argues his trial counsel should have introduced evidence of certain prior acts of Bauer.
 {¶ 64} The trial court held that trial counsels' performance was not deficient, since evidence of these events was inadmissible pursuant to the Supreme Court of Ohio's decision in State v. Barnes (2002),94 Ohio St.3d 21. In State v. Barnes, the court held "[a] defendant asserting self-defense cannot introduce evidence of specific instances of the victim's conduct to prove that the victim was the initial aggressor." Id. at syllabus.
 {¶ 65} Trimble asserts his trial counsel should have introduced evidence that Bauer smacked him in the face during a Halloween party. Trimble argues that two witnesses, Angela and Darryl French, told the police in a statement that Bauer smacked Trimble in the face at a Halloween party at the Frenches' home. However, as Trimble *Page 16 
notes, at trial, both of these witnesses denied that Bauer smacked Trimble at the Halloween party. Trimble's trial counsel cross-examined these witnesses about this inconsistency, and both Angela and Darryl French testified that Bauer did not slap Trimble at the Halloween party.
 {¶ 66} Trimble also contends trial counsel should have introduced the testimony of Jeff Murphy, who had previously reported that he heard Trimble and Bauer argue in the past. However, at trial, Trimble's counsel did cross-examine Murphy about this statement, and he denied hearing Trimble and Bauer argue.
 {¶ 67} In regard to the reported incidents from the Frenches and Murphy, Trimble's trial counsel cross-examined all three witnesses about their prior statements to the police. At trial, all three witnesses denied making the prior statements to the police. Thus, Trimble has not shown that his trial counsels' performance fell below an objective level of reasonable representation.
 {¶ 68} Finally, Trimble argues that trial counsel should have introduced evidence regarding Bauer's arrest for domestic violence charges against her ex-husband in 2002. It is important to note that Bauer was found not guilty of these charges, and the charges were dismissed. Since Bauer was not convicted of any crime, this evidence was inadmissible, even if Trimble could get around the admissibility hurdle of State v. Barnes regarding specific instances of prior conduct.
 {¶ 69} The trial court did not abuse its discretion by finding that Trimble's third claim for relief was not meritorious.
 {¶ 70} In his fifth claim for relief, Trimble asserts his trial counsel were ineffective for failing to have certain medical testing conducted. *Page 17 
 {¶ 71} Trimble asserts that "testing performed by magnetic resonance imaging (MRI) and/or positron emission tomography scan (PET scan) would have provided mitigating evidence for the jury to weigh against the aggravating circumstances as support for a life sentence."
 {¶ 72} The only evidence Trimble submitted in support of this argument is Dr. Smith's affidavit, wherein he states that certain testing "could have been helpful." Trimble has not submitted any evidence demonstrating what the results of such testing would have been or how those results would have affected the trial. Accordingly, Trimble has not demonstrated any prejudice regarding this claimed instance of ineffective assistance of counsel.
 {¶ 73} The trial court did not abuse its discretion by denying Trimble's fifth claim for relief.
 {¶ 74} In his sixth claim for relief, Trimble argues his trial counsel were ineffective for failing to adequately prepare one of the defense experts, Dr. Robert Smith, for his testimony.
 {¶ 75} At trial, during the cross-examination of Dr. Smith, the prosecutor questioned Dr. Smith about Positano's 9-1-1 call and Trimble's statement to Sheriff Kaley. Dr. Smith acknowledged that he had not listened to the recording of the 9-1-1 call or seen a transcript of Trimble's statement. Trimble submitted Dr. Smith's affidavit in support of his petition for postconviction relief. Therein, Dr. Smith states that he had asked defense counsel for all discovery materials and that defense counsel assured him that he was provided with everything. Dr. Smith stated that he was forced to acknowledge that the missing items "would have been significant for [his] review and may have influenced [his] opinion." Finally, Dr. Smith stated that he believed his *Page 18 
credibility with the jury was compromised due to his admission that he had not reviewed these materials.
 {¶ 76} Initially, we note that the trial court accepted Dr. Smith as an expert in the field of clinical psychology and in the field of chemical dependency. His primary purpose was to provide details of Trimble's history of drug abuse and the effects of that abuse on his mental health. Thus, the actual events of January 21, 2005 were of lesser significance in Dr. Smith's analysis.
 {¶ 77} Further, the Supreme Court of Ohio has held there are several factors that a trial court can consider when assessing the credibility of an affidavit in ruling on a petition for postconviction relief.State v. Calhoun (1999), 86 Ohio St.3d 279, 285, citing State v.Moore (1994), 99 Ohio App.3d 748, 754-756. One of those factors is whether the statements in the affidavit are contradicted by the evidence in the record. Id.
 {¶ 78} As the trial court noted, at trial, Dr. Smith testified that Trimble's responses to him were consistent with Trimble's responses to Sheriff Kaley and that Dr. Smith testified that listening to the 9-1-1 call would not have changed his opinion. Since Dr. Smith's affidavit was contradicted by his trial testimony, the trial court did not abuse its discretion in failing to find that the affidavit constituted substantive evidence warranting relief.
 {¶ 79} In his seventh claim for relief, Trimble claims he was denied a fair and impartial trial due to the state's introduction of "an arsenal of guns."
 {¶ 80} The trial court found this argument was barred by the doctrine of res judicata.
 {¶ 81} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any *Page 19 
proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." State v. Szefcyk
(1996), 77 Ohio St.3d 93, syllabus.
 {¶ 82} In a petition for postconviction relief, `[t]o overcome theres judicata bar, evidence offered dehors the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record." State v. Lawson (1995),103 Ohio App.3d 307, 315.
 {¶ 83} The state introduced several guns at trial, many of which were not involved in the crimes in question. However, defense counsel objected to the admission of these guns during the trial. Since the transcript of the trial fully documents the admission of the guns and trial counsels' objection thereto, this is an issue that could have been raised on direct appeal.
 {¶ 84} Trimble attempts to circumvent the doctrine of res judicata by referencing an affidavit from his mother, Bresley. In her affidavit, Bresley states that all of the guns found in the home were hers and that only she had access to the gun safe. She claims her late husband, who died in 1993, owned the guns. Again, the Supreme Court of Ohio has held there are several factors that a trial court can consider when assessing the credibility of an affidavit in ruling on a petition for postconviction relief, including whether the statements in the affidavit are contradicted by the evidence in the record. State v. Calhoun,86 Ohio St.3d at 285. (Citation omitted.) The trial court noted that Trimble told Sheriff Kaley that the guns were his, that he was the only person who knew the combination to the gun safe in the basement, and that only he had keys to the ammunition cabinet. *Page 20 
 {¶ 85} The trial court did not abuse its discretion by finding Bresley's affidavit regarding the guns incredible. Thus, the trial court did not err by finding that this claim was barred by res judicata.
 {¶ 86} In his eighth claim for relief, Trimble claims his trial counsel were ineffective for failing to excuse Juror Anita Laudermilk during the voir dire proceedings.
 {¶ 87} The trial court also found that this claimed error was barred by res judicata. The voir dire examination of Juror Laudermilk, as well as two of her questionnaires, is contained in the record. Thus, this is an issue that could have been raised on direct appeal. Trimble argues that this claim is not barred by res judicata because he relies on evidence outside the record, i.e., an affidavit from an individual employed by the Ohio Public Defender's Office. We disagree.
 {¶ 88} Trimble submitted an affidavit from Felicia Crawford. Crawford interviewed Juror Laudermilk after the trial. Crawford states that Juror Laudermilk described her experience as "fun," and that she believes anyone could fit some criteria of bipolar disorder as it was explained by the defense expert. Neither comment made by Juror Laudermilk after the trial is sufficient to remove this issue from the res judicata bar. Her description of the trial in its entirety as "fun" does not suggest that she was biased. Also, the fact that she believes anyone could show some of the symptoms of bipolar disorder based on the testimony of the expert witness does not indicate a lack of impartiality. Moreover, Trimble has not presented any evidence showing that either of these issues could have been discovered by trial counsel prior to the trial.
 {¶ 89} Trial counsels' decision of whether to excuse Juror Laudermilk is a claimed error that can be reviewed on direct appeal based on the evidence in the *Page 21 
record. Thus, the trial court did not abuse its discretion by concluding that this claimed error was barred by the doctrine of res judicata.
 {¶ 90} In his ninth claim for relief, Trimble contends his trial counsel were ineffective for failing to "present accurate and comprehensive psychological mitigating evidence" at the penalty phase.
 {¶ 91} Trimble cites to the following colloquy, which occurred during the testimony of Dr. Smith at the mitigation phase of the trial:
 {¶ 92} "Q. Have there been any clinical or diagnostic tests comparing the brains of schizophrenics and methamphetamine addicts to your knowledge?
 {¶ 93} "A. Not that I'm aware of."
 {¶ 94} Trimble argues that trial counsel should have prepared the expert witness by alerting Dr. Smith to the existence of these tests.
 {¶ 95} In support of this argument in his petition for postconviction relief, Trimble submitted copies of three articles from various journals regarding the effects of methamphetamine use. However, Trimble has not submitted any accompanying affidavits to authenticate these exhibits. In a similar situation in which unauthenticated documents were submitted in support of a petition for postconviction relief, the Eighth Appellate District held:
 {¶ 96} "[T]he trial court was not bound to accept these documents as substantive evidence. These documents contain no affidavit, and on most authorship is unclaimed. Even had these documents been authenticated, they would not be sufficient because they are absolutely hearsay."State v. Taborn (Nov. 22, 2000), 8th Dist. No. 77650, 2000 Ohio App. LEXIS 5488, at *11. *Page 22 
 {¶ 97} In the case sub judice, the attached articles were not accompanied by affidavits authenticating them. Each of the articles indicates that it was written by multiple authors; however, since none of those individuals submitted an affidavit, the contents of the article are necessarily hearsay. See Evid. R. 801(C).
 {¶ 98} The evidentiary materials submitted by Trimble in support of this argument lack credibility because they are unauthenticated and are hearsay. Thus, Trimble has not met his burden of demonstrating that he was prejudiced by this perceived error. Accordingly, his claim for ineffective assistance of counsel lacks merit.
 {¶ 99} The trial court did not abuse its discretion by finding Trimble's ninth claim for relief to be without merit.
 {¶ 100} In his 11th claim for relief, Trimble argues that the death penalty imposed by the trial court by means of lethal injection "violates his constitutional rights to protection from cruel and unusual punishment and to due process of law."
 {¶ 101} As the state notes, the Supreme Court of Ohio has consistently upheld the constitutionality of lethal injection to carry out a death sentence. State v. Frazier, 115 Ohio St.3d 139, 2007-Ohio-5048, at ¶ 245, citing State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845, at ¶ 131 and State v. Carter (2000), 89 Ohio St.3d 593, 608.
 {¶ 102} Moreover, the United States Supreme Court has recently addressed this issue. Baze v. Rees (2008), 128 S.Ct. 1520. In Baze v.Rees, several Kentucky inmates challenged the constitutionality of Kentucky's use of lethal injection. The United States Supreme Court held that the use of a three-drug lethal injection process does not violate the constitution. Id. at 1526-1527. In analyzing the Supreme Court's decision, the Tenth Appellate District has held that "the lethal injection procedure used in Ohio is *Page 23 
substantially similar to the one affirmed by the United States Supreme Court in Baze." State v. Bethel, 10th Dist. No. 07AP-810,2008-Ohio-2697, at ¶ 62. (Citation omitted.)
 {¶ 103} The trial court did not abuse its discretion by denying Trimble's 11th claim for relief.
 {¶ 104} In his 12th claim for relief, Trimble contends that Ohio's postconviction relief statute did not provide him with an adequate corrective process.
 {¶ 105} We note that the Tenth District and "other Ohio appellate courts have rejected defendant's claim that Ohio's postconviction relief statute does not afford an adequate corrective process." State v.Hessler, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, at ¶ 73. (Citations omitted.)
 {¶ 106} Trimble argues that R.C. 2953.21 is not an adequate corrective process because it does not afford an indigent defendant with discovery or funds for expert witnesses. In rejecting similar arguments, the Third Appellate District has held that R.C. 2953.21 is a civil attack on a judgment and, thus, the petitioner is entitled only to those rights that are granted by the statute. State v. Yarbrough (Apr. 30, 2001), 3d Dist. No. 17-2000-10, 2001 Ohio App. LEXIS 1930, at *32-33, citing State v.Calhoun, 86 Ohio St.3d at 281. Further, the Third District noted that statutes have a strong presumption of constitutionality. Id. at *30. (Citations omitted.) Finally, the Third District held:
 {¶ 107} "We cannot say that the failure to afford a postconviction relief petitioner discovery during the initial proceeding to determine whether an evidentiary hearing is warranted renders the potconviction relief process unconstitutional. Ohio case law has affirmatively established that the lack of discovery during the initial stages of the postconviction process does not violate any constitutional rights of the postconviction relief petitioner." Id. at *33. *Page 24 
 {¶ 108} In light of the foregoing analysis, we conclude that Ohio's postconviction relief statute is constitutional and reject Trimble's claim that it does not offer an adequate corrective process.
 {¶ 109} Additionally, the trial court cited State v. Fitzpatrick as authority for rejecting Trimble's claim. State v. Fitzpatrick, 1st Dist. No. C-030804, 2004-Ohio-5615. In Fitzpatrick, the court held that a postconviction claim must be based on a constitutional deprivation that occurred during the proceedings resulting in the petitioner's conviction. Id. at ¶ 60. (Citation omitted.) Thus, any alleged argument regarding the unconstitutionality of R.C. 2953.21 did not stem from the proceedings that resulted in Trimble's conviction. Id.
 {¶ 110} The trial court did not abuse its discretion when it denied Trimble's 12th claim for relief.
 {¶ 111} In his 13th claim for relief, Trimble asserts his constitutional rights were violated due to the cumulative errors that occurred at trial.
 {¶ 112} The Supreme Court of Ohio has recognized the doctrine of cumulative error. State v. Brown, 100 Ohio St.3d 51, 2003-Ohio-5059, at ¶ 48, citing State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. "Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner (1995),74 Ohio St.3d 49, 64.
 {¶ 113} In this matter, we have not found "multiple instances of harmless error;" accordingly, Trimble's argument regarding cumulative error is not applicable. Id. (Citations omitted.) *Page 25 
 {¶ 114} The trial court did not abuse its discretion when it denied Trimble's 13th claim for relief.
 {¶ 115} Trimble's first assignment of error is without merit.
 {¶ 116} The judgment of the trial court is affirmed.
DIANE V. GRENDELL, P.J., concurs, COLLEEN MARY O'TOOLE, J., dissents.
[1] In State v. Newton, the defendant sought payment for a PET scan in preparation for his trial. Thus, the Supreme Court of Ohio's analysis was not in the context of a petition for postconviction relief.
[2] Trimble did not advance a fourth claim for relief, and he withdrew his tenth claim for relief prior to the trial court ruling on his petition for postconviction relief. For purposes of this opinion, we will refer to Trimble's claims for relief by their original numbering as set forth in his petition for postconviction relief. *Page 1