[Cite as *State v. Tolliver*, 2014-Ohio-4824.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-170 |
| v. | : | (C.P.C. No. 02CR-121) |
| Kevin A. Tolliver, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 30, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

*Kevin A. Tolliver*, pro se.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Kevin A. Tolliver, pro se, appeals from a decision and entry of the Franklin County Court of Common Pleas denying his petition to set aside the judgment of his conviction. Because the trial court did not abuse its discretion in denying appellant's petition, we affirm.

I. Facts and Procedural History

{¶ 2} On June 24, 2002, appellant was found guilty, pursuant to jury verdict, of one count of murder with a firearm specification, in violation of R.C. 2903.02 and 2941.145, for the shooting death of Claire Schneider. The trial court sentenced appellant to 15 years to life in prison on the murder charge with an additional 3 years on the firearm specification. On July 11, 2002, appellant filed a motion for judgment of acquittal, or, in

the alternative, motion for new trial, which the trial court denied without a hearing by a decision and entry filed August 13, 2002.

{¶ 3} Appellant appealed both his conviction and the trial court's denial of his motion for new trial, arguing that the trial court erred by failing to suppress statements appellant made during his custodial interrogation, by admitting a blood-covered shirt into evidence, by failing to rule on his pretrial motion to compel the prosecution to provide access to Schneider's diary, by failing to grant a hearing on appellant's motion for a new trial, and because his conviction was against the manifest weight of the evidence and he was deprived of a fair trial by the prosecutor's alleged misconduct. This court rejected appellant's arguments and affirmed the judgment of the trial court. *State v. Tolliver*, 10th Dist. No. 02AP-811, 2004-Ohio-1603 ("*Tolliver I*"), *appeal not allowed*, 103 Ohio St.3d 1407, 2004-Ohio-3980. Our decision in *Tolliver I* includes a detailed recitation of the evidence presented at trial.

{¶ 4} On June 9, 2003, during the pendency of his direct appeal, appellant filed a petition for postconviction relief and requested an evidentiary hearing ("first postconviction petition"). In his first postconviction petition, appellant asserted (1) unlawful incarceration under the Eighth Amendment due to his "actual innocence," and (2) ineffective assistance of counsel based on his counsel's failure to test for gunshot residue on various clothing items, failure to elicit evidence from Schneider's family members regarding Schneider's emotional state before her death, and failure to assert a theory that Schneider committed suicide because she was suffering from "Paxil withdrawal syndrome."

{¶ 5} The trial court denied appellant's first postconviction petition without a hearing on May 7, 2004. The trial court concluded res judicata bars appellant's claims of "actual innocence" and ineffective assistance of counsel as it relates to trial counsel's failure to test for gunshot residue and elicit evidence regarding Schneider's emotional state. As to trial counsel's alleged ineffectiveness due to failure to advance a theory of suicide due to "Paxil withdrawal syndrome," the trial court concluded appellant presented insufficient documentation to support this claim. Appellant appealed the denial of his first postconviction petition and this court affirmed, concluding the trial court did not abuse its discretion by denying the first postconviction petition without an evidentiary

hearing. *State v. Tolliver*, 10th Dist. No. 04AP-591, 2005-Ohio-989 ("*Tolliver II*"), *appeal not allowed*, 106 Ohio St.3d 1488, 2005-Ohio-3978. We summarized the documentation appellant provided in support of the "Paxil withdrawal syndrome" claim as follows:

> [A]ppellant submitted documents that reference patients becoming suicidal after discontinuing Paxil or related medications. Appellant also provided copies of sworn testimony that Drs. Healy, Shipko and Glenmullen gave in a civil products liability suit against Paxil, that challenged Paxil advertisements and warning labels. Dr. Healy stated that ten percent of Paxil users have severe withdrawal symptoms that "can" or "may" lead to suicide. (R. 370, Dr. Healy testimony, ¶¶ 16, 24.) Dr. Shipko described symptoms of Paxil withdrawal, but did not mention suicide. Dr. Glenmullen said that "[s]ome patients in acute withdrawal have impulsive, aggressive, or suicidal urges." (R. 370, Dr. Glenmullen testimony, ¶ 24.)
>
> Appellant also submitted correspondence from Drs. Healy and Shipko. Appellant asked the doctors to comment on whether Schneider committed suicide because of Paxil withdrawal. Dr. Healy indicated that "[t]he brief outline of your case makes it look stronger than many others in this area. However, I am particularly bogged down just at the moment." (R. 371, Dr. Healy correspondence.) Dr. Healy then referred appellant to another expert. Dr. Shipko stated, "[b]ased on the information available it seems that there is ample information to suggest that Paxil was the problem * * *. Usually I review all of the available records before I indicate whether or not I would be willing to render an opinion." (R. 371, Dr. Shipko correspondence.)
>
> Furthermore, appellant presented a pre-marketing study on Paxil and related medications. The study indicates that there is "no signal * * * that [Paxil and related medications] exposes [sic] a subset of depressed patients to additional risk for suicide." (R. 370, Review and Evaluation of Clinical Data, 25.)

*Tolliver II* at ¶ 14-16.

{¶ 6} Appellant then sought federal relief through a petition for a writ of habeas corpus. The federal district court denied the writ and the Sixth Circuit affirmed. *Tolliver*

*v. Sheets*, 530 F.Supp.2d 957 (S.D.Ohio 2008), *aff'd*, 594 F.3d 900 (6th Cir.2010) ("*Tolliver III*").

{¶ 7} On March 14, 2012, appellant filed a document captioned "[Appellant's] Amended Petition to Vacate or Set Aside Judgment of Conviction [R.C.] 2953.21 – or Alternatively – Successive Petition [R.C.] 2953.23" (the "second postconviction petition"). Appellant simultaneously filed a "Motion for Leave to Amend Petition to Vacate or Set Aside Judgment of Conviction [R.C.] 2953.21(F)." Through his second postconviction petition and subsequent filings, appellant argued there were errors during his trial related to his counsel's alleged ineffectiveness and that he had newly discovered exculpatory evidence. The state responded on April 27, 2012 with a memorandum arguing appellant's attempted amendment to his first postconviction petition was untimely and requesting the trial court dismiss appellant's second postconviction petition.

{¶ 8} In support of his second postconviction petition, appellant filed various affidavits, correspondence with psychiatrist Dr. Stuart Shipko, and "the Shipko report" containing Dr. Shipko's opinion of the role Paxil withdrawal may have played in Schenider's death, the testimony of psychiatrist Dr. Peter Breggin from a 1999 civil lawsuit against the manufacturer of Paxil, a 2006 article by Dr. Breggin explaining his findings on Paxil's effects, the video transcript of appellant's police interview, and a copy of Schneider's diary.

{¶ 9} In the Shipko letter dated February 12, 2011, Dr. Shipko gave his opinion that "within a reasonable medical certainty, Paxil withdrawal significantly contributed to Claire Schneider engaging in an impulsive suicidal gesture that resulted in her death." (Second Postconviction Petition, Shipko Letter, 1.) Dr. Shipko also stated that he reviewed Dr. Breggin's independent analysis of the manufacturer's data and "[i]t is clear * * * that the company has been withholding information from physicians concerning suicide that occurs shortly after stopping an antidepressant." (Second Postconviction Petition, Shipko Letter, 2.)

{¶ 10} The Shipko report, dated November 6, 2006, contained a summary of the information Dr. Shipko reviewed before concluding (1) "testimony from the informant concerning the motive for homicide is implausible in light of Ms. Schneider's diary," (2) "[t]he information from the coroner describes a gunshot wound consistent with a

suicide," (3) Schneider's physician's "testimony was factually incorrect and, in fact, the opposite of what he said is true" because "[w]ithdrawal is common with Paxil and severe withdrawal is common when Paxil is stopped abruptly," (4) "[t]he sort of impulsive suicide by Ms. Schneider was typical of Paxil withdrawal," and "[t]he possible contributions of withdrawal from Wellbutrin, as well as the ingestion of alcohol would be expected to increase the likelihood of Ms. Schneider acting on suicidal impulses related to Paxil withdrawal," and (5) "[t]he manufacturer of Paxil, GlaxoSmithKline, has been systematically hiding and manipulating their own clinical data to minimize information concerning the risks of suicide when starting and stopping the drug Paxil." (Second Postconviction Petition, Shipko Report, 15-16.)

{¶ 11} Christopher King, an investigative journalist, stated in his affidavit that he had thoroughly researched appellant's case and that "evidence withheld during the trial was valuable, exculpatory evidence." (Second Postconviction Petition, King Affidavit, ¶ 4.) King further averred that appellant was "unable to receive [the information regarding the effects of Paxil withdrawal] through no fault of his own because it simply was not available because the drug companies conspired to hide it." (Second Postconviction Petition, King Affidavit, ¶ 15.) Kathryn Koch, a licensed private investigator, stated in her February 2005 affidavit that she learned Schneider's diary was in possession of the prosecutor's office but not provided to the defense. She further stated that she learned the names of three additional witnesses after the trial but that because appellant was indigent, he was unavoidably prevented from acquiring statements from those witnesses. Those witnesses were Dale Spencer, Donald McMullen, and Chad Andrews.

{¶ 12} Spencer, a former inmate in the Franklin County jail, stated in his October 2004 affidavit that he saw Joe Adams, the prosecution's jailhouse informant, go into appellant's cell when appellant was not there and "read [appellant's] motion for discovery and court documents." (Second Postconviction Petition, Spencer Affidavit.) Spencer stated Adams asked him "to get information from [appellant] and report back to Adams, because [appellant] would not provide information to Adams." (Second Postconviction Petition, Spencer Affidavit.) McMullen, another former inmate of the Franklin County jail, stated in his October 2004 affidavit that he saw Adams showing appellant's discovery and other legal documents to other inmates. A third former inmate, Andrews, stated in

his October 2004 affidavit that Adams tried to recruit him to testify against appellant but that Andrews declined "because it would have been a lie." (Second Postconviction Petition, Andrews Affidavit.) Andrews further stated that other inmates also said Adams was trying to recruit them to testify against appellant because Adams "got [a hold] of [appellant's] paperwork." (Second Postconviction Petition, Andrews Affidavit.)

{¶ 13} Appellant also submitted the affidavit of his ex-wife, Natasha Tolliver, dated January 5, 2012 in which she stated she "find[s] it hard to believe [appellant] is capable of murder. He has never attempted to harm [Natasha Tolliver] in any way regardless of the situation." (Second Postconviction Petition, Natasha Tolliver Affidavit, ¶ 7.)

{¶ 14} In an October 2, 2013 decision and entry, the trial court denied appellant's second postconviction petition without a hearing, concluding appellant failed to assert any substantive grounds for relief and that his claims are barred by res judicata. The trial court cited the bar on second or successive postconviction relief contained in R.C. 2953.23(A). The record indicates some problems with service of the October 2, 2013 decision and entry, and on February 14, 2014 appellant filed a motion requesting service of judgment. Appellant subsequently filed a Crim.R. 33 motion for new trial on February 24, 2014 which is still pending in the trial court. After receiving service, appellant timely appeals the October 2, 2013 decision and entry denying his second postconviction petition.

## II. Assignments of Error

{¶ 15} Appellant assigns the following two assignments of error for our review:

> I. Trial court erred and abused its discretion in not holding an evidentiary hearing pursuant to O.R.C. §2953.21(E) and 2953.22; also in failing to make findings and conclusions.
>
> II. Trial court erred and abused its discretion in finding there was no substantive grounds for relief and claims are barred by res judicata when second petition rectified deficiencies of the first and presented multiple new claims upon newly discovered evidence.

## III. Applicable Law and Standard of Review

{¶ 16} " '[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing

court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence.' " *State v. Sidibeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, ¶ 7, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58. Further, we review a trial court's decision to deny a postconviction petition without a hearing under an abuse of discretion standard. *State v. Boddie*, 10th Dist. No. 12AP-811, 2013-Ohio-3925, ¶ 11, citing *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 14. An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 17} As a general matter, a petition for postconviction relief is a collateral civil attack on a criminal judgment, not an appeal of the judgment. *Sidibeh* at ¶ 8, citing *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). A petition for postconviction relief " 'is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record.' " *Id.*, quoting *State v. Murphy*, 10th Dist. No. 00AP-233 (Dec. 26, 2000). Thus, a postconviction petition does not provide a petitioner a second opportunity to litigate his or her conviction. *Id.*, citing *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, ¶ 32. Instead, R.C. 2953.21 affords a petitioner postconviction relief " 'only if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution.' " *Id.*, quoting *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph four of the syllabus.

{¶ 18} A trial court may not entertain a second postconviction petition unless the petitioner initially demonstrates either (1) he was unavoidably prevented from discovering the facts necessary for the claim for relief, or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation. R.C. 2953.23(A)(1)(a). If the petitioner can satisfy one of those two conditions, he must also demonstrate that but for the constitutional error at trial no reasonable finder of fact would have found him guilty. R.C. 2953.23(A)(1)(b).

{¶ 19} The doctrine of res judicata places another significant restriction on the availability of postconviction relief. *Sidibeh* at ¶ 12. " 'Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel

from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment.' " (Emphasis deleted.) *State v. Cole*, 2 Ohio St.3d 112, 113 (1982), quoting *Perry* at paragraph nine of the syllabus. "Res judicata also implicitly bars a petition from 'repackaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." *Hessler* at ¶ 37.

{¶ 20} Further, a petitioner is not automatically entitled to an evidentiary hearing on a postconviction petition. *Sidibeh* at ¶ 13, citing *State v. Jackson*, 64 Ohio St.2d 107, 110-13 (1980). To warrant an evidentiary hearing, the petitioner bears the initial burden of providing evidence demonstrating a cognizable claim of constitutional error. *Id.*, citing R.C. 2953.21(C); *Hessler* at ¶ 33. The trial court may deny the petitioner's postconviction petition without an evidentiary hearing "if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate sufficient operative facts to establish substantive grounds for relief." *Sidibeh* at ¶ 13, citing *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus.

## IV. First and Second Assignments of Error – Denial of Appellant's Petition

{¶ 21} Appellant's assignments of error are interrelated and we address them jointly. Appellant argues the trial court abused its discretion when it denied appellant's second postconviction petition without an evidentiary hearing and without issuing findings of fact and conclusions of law in support of its decision. Appellant asserts he is entitled to postconviction relief based on (1) newly discovered evidence undermining the veracity of the evidence at trial, (2) newly discovered evidence demonstrating his counsel's ineffectiveness, and (3) the accumulation of these alleged errors amounting to deprive appellant of a fair trial.

{¶ 22} As we outlined above, there are certain limits to a second petition for postconviction relief. R.C. 2953.23(A). A trial court may not entertain a second postconviction petition unless the petitioner initially demonstrates either (1) he was unavoidably prevented from discovering the facts necessary for the claim for relief, or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation. R.C. 2953.23(A)(1)(a). If the

petitioner can satisfy one of those two conditions, he must also demonstrate that but for the constitutional error at trial no reasonable finder of fact would have found him guilty. R.C. 2953.23(A)(1)(b).

{¶ 23} Here, appellant does not assert that the United States Supreme Court has recognized a new federal or state right that applies retroactively to his situation. Therefore, the court "may not entertain" appellant's second postconviction petition unless he demonstrates (1) that he was unavoidably prevented from discovering the facts necessary for his claim for relief, and (2) that but for a constitutional error, no reasonable factfinder would have found him guilty.

## A. Ineffective Assistance of Counsel

{¶ 24} Appellant contends that he set forth sufficient operative facts to support his ineffective assistance of counsel claims, thereby warranting an evidentiary hearing. We disagree.

## 1. "Paxil Withdrawal Syndrome" Evidence

{¶ 25} In order to secure a hearing on his claim for postconviction relief based on the ineffective assistance of counsel, appellant had the burden of submitting evidentiary documents containing sufficient operative facts which, if believed, would establish (1) appellant's trial counsel substantially violated at least one of counsel's essential duties to his or her client, and (2) appellant suffered prejudice as a result. *Sidibeh* at ¶ 15, citing *Cole* at 114; *Calhoun* at 289. "Judicial scrutiny of counsel's performance must be highly deferential * * * [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 143-44 (1989). In his second postconviction petition, appellant contended that his trial counsel was ineffective by failing to claim that Schneider committed suicide from "Paxil withdrawal syndrome." Appellant advanced a similar argument in his first postconviction petition. In *Tolliver II*, we concluded appellant failed to set forth sufficient operative facts to support his claim that trial counsel provided ineffective assistance by not presenting the "Paxil withdrawal syndrome" defense. *Tolliver II* at ¶ 31. In so concluding, we noted appellant "presented no medical expert opinion or analysis specifically linking Schneider's death to suicide triggered by 'Paxil withdrawal syndrome.' " *Id.* at ¶ 26.

{¶ 26} In his second petition for postconviction relief, appellant provided a Shipko letter dated February 12, 2011 and the Shipko report dated November 6, 2006. Appellant argues this evidence remedies the deficiencies in his first postconviction petition in this regard. While the Shipko letter provides a medical expert opinion that Schneider's death could be linked to "Paxil withdrawal syndrome" that was previously lacking in the first postconviction petition, appellant cannot demonstrate ineffective assistance of counsel from trial counsel's failure to assert this theory as a defense.

{¶ 27} According to the Shipko report, the Food and Drug Administration advisory board first issued a warning about the possible association between Paxil and suicide in 2004, and the manufacturer of Paxil did not include a warning of an increased risk of suicide until 2006. The Breggin publication containing similar arguments regarding the link between Paxil withdrawal and suicide similarly was not available until 2006. We cannot fault appellant's trial counsel for not advancing a theory of which he would not have had sufficient knowledge in 2002, the time of appellant's trial. *See State v. Miranda*, 10th Dist. No. 13AP-271, 2013-Ohio-5109, ¶ 19 (noting that "[i]n general, trial counsel is not ineffective in 'failing to be clairvoyant' ").

{¶ 28} Additionally, trial counsel's decision not to vigorously pursue a defense based on "Paxil withdrawal syndrome" may have been a strategic decision. Appellant maintained a version of events that Schneider accidentally shot herself and did not know the gun was loaded, so advancing a theory of purposeful suicide linked to "Paxil withdrawal syndrome" would have been incompatible both with the note appellant left near Schneider's body and with appellant's statements to police immediately following Schneider's death. *See State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 54 (10th Dist.) (noting generally that matters falling " 'within the rubric of trial strategy' " will not be second-guessed by a reviewing court), quoting *State v. Madison*, 10th Dist. No. 08AP-246, 2008-Ohio-5223, ¶ 11.

{¶ 29} Further, to the extent appellant argues the information regarding the "Paxil withdrawal syndrome" supports his actual innocence rather than ineffective assistance of counsel, we are mindful that postconviction relief is limited to constitutional errors. Subsequently discovered evidence, standing alone, is not sufficient to prove substantive grounds for postconviction relief because it does not meet the high standard of

demonstrating a constitutional violation in the proceeding that actually resulted in the conviction. *State v. Whiteside*, 10th Dist. No. 00AP-223 (Sept. 29, 2000), citing *State v. Powell*, 90 Ohio App.3d 260, 264 (1st Dist.1993) (noting the error complained of must be "of constitutional dimension" and must have occurred at the time of trial and conviction). Because appellant's petition and supporting documents did not adequately demonstrate sufficient operative facts establishing substantive grounds for relief with regard to his "Paxil withdrawal syndrome" theory, he was not entitled to a hearing, and the trial court did not err in ruling on appellant's petition without a hearing. *Sidibeh* at ¶ 13, citing *Calhoun* at paragraph two of the syllabus.

## 2. Evidence Attacking the Credibility of a Prosecution Witness

{¶ 30} Appellant also argues he is entitled to postconviction relief on the grounds of ineffective assistance of counsel because he was unavoidably prevented from discovering the evidence he contends would have changed the outcome of the trial. Specifically appellant has evidence suggesting Adams, the prosecution's jailhouse informant witness, obtained information about appellant by taking legal documents from appellant's cell without appellant's knowledge. This information, appellant asserts, suggests Adams fabricated his testimony that appellant confessed to murdering Schneider, and appellant argues his trial counsel was ineffective in failing to locate and call these witnesses at trial. In support, appellant relies on the affidavits of Spencer, McMullen, and Andrews, three other former Franklin County jail inmates who were housed in the Franklin County jail at the same time as appellant and Adams.

{¶ 31} Regardless of whether appellant was unavoidably prevented from obtaining statements from these witnesses, appellant cannot demonstrate that the ability to call these witnesses would have changed the outcome of the trial. Indeed, appellant's trial counsel called David Dye, another Franklin County jail inmate, as a witness during the trial in an attempt to undermine Adams' testimony. Dye's testimony was similar to the affidavits of Spencer, McMullen, and Andrews: that Adams approached him about also testifying against appellant and that Dye had the impression that Adams may have "made up" the story about appellant. *Tolliver I* at ¶ 33. There was ample other evidence at trial supporting appellant's conviction, and appellant does not demonstrate that no reasonable

factfinder would have found him guilty had he been able to call these additional witnesses in order to undermine Adams' credibility.

**B. Res Judicata**

{¶ 32} Next, appellant argues the trial court erred by applying res judicata to the issue of the admissibility of Schneider's diary. Appellant claims that res judicata does not apply to the inadmissibility of the diary because "the new evidence" related to the additional jailhouse witnesses and the expert opinion of Dr. Shipko somehow render the exclusion of the diary erroneous.

{¶ 33} On direct appeal from his conviction, appellant argued the trial court erred when it failed to rule on his pretrial motion to compel the diary. This court considered the issue, noted the diary had little probative value regarding the state of the couple's relationship at the time of Schneider's death, and concluded the trial court's failure to provide appellant access to the diary did not affect a substantial right. *Tolliver I* at ¶ 112-13.

{¶ 34} We are not persuaded by appellant's argument that other newly discovered evidence somehow reignites the issue of the diary's admissibility. Thus, the admissibility of Schneider's diary is barred by res judicata and not an appropriate basis for postconviction relief. *Sidibeh* at ¶ 12, citing *Hessler* at ¶ 37 (stating "[r]es judicata also implicitly bars a petitioner from 'repackaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal").

{¶ 35} In sum, appellant is unable to establish he is entitled to relief on his second postconviction petition. Appellant's arguments are either barred by res judicata or he is unable to satisfy the two-pronged requirement of unavoidable prevention and outcome determination for a second or successive postconviction petition contained in R.C. 2953.23(A).

**C. Findings of Fact and Conclusions of Law**

{¶ 36} Finally, appellant's argument that the trial court erred in failing to issue findings of fact and conclusions of law also fails. As we have noted, appellant was not entitled to an evidentiary hearing on his petition where he failed to provide sufficient operative facts demonstrating he was entitled to substantive grounds for relief for some claims and res judicata operated to bar his arguments as to other claims. *Sidibeh* at ¶ 13,

citing *Calhoun* at paragraph two of the syllabus; *Boddie* at ¶ 15, citing *State v. Wright*, 10th Dist. No. 08AP-1095, 2009-Ohio-4651, ¶ 11. " '[A] trial court's decision dismissing a postconviction petition does not need to be designated "findings of fact and conclusions of law," so long as the decision is sufficient to advise the petitioner and the appellate court of the trial court's reasoning and permit meaningful appellate review.' " *Boddie* at ¶ 15, quoting *State v. Lowe*, 10th Dist. No. 10AP-584, 2011-Ohio-3996, ¶ 17. Because the trial court's entry specifically stated it denied appellant's petition based on res judicata and appellant's failure to satisfy the strict requirements for a second petition contained in R.C. 2953.23(A), the trial court's decision and entry denying appellant's petition contained sufficient information to apprise appellant of the grounds for its judgment and to enable this court to properly determine his appeal. *Id.*, citing *State ex rel. Carrion v. Harris*, 40 Ohio St.3d 19 (1988). Accordingly, we overrule appellant's first and second assignments of error.

## V. Disposition

{¶ 37} Based on the foregoing reasons, the trial court did not abuse its discretion in denying appellant's second postconviction petition without a hearing. Having overruled appellant's two assignments of error, we affirm the decision and entry of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

————————————