[Cite as *State v. McKelton*, 2015-Ohio-4228.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.  CA2015-02-028 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 10/13/2015 |
| - vs - | | |
| | : | |
| CALVIN McKELTON, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2010-02-0189

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Rachel Troutman and Shawn Welch, Ohio Public Defenders Office, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1}  Defendant-appellant, Calvin McKelton, appeals from the decision of the Butler County Court of Common Pleas denying his petition for postconviction relief after he was sentenced to death upon a jury finding him guilty of murder, aggravated murder, felonious assault, domestic violence, aggravated arson, tampering with evidence and abuse of a corpse.  For the reasons outlined below, we affirm.

{¶ 2} On February 1, 2010, a Butler County Grand Jury returned an indictment charging McKelton with the above named offenses resulting from his involvement and attempted cover-up of the murder and aggravated murder of Margaret Allen and Germaine Lamar Evans. The indictment also included two death penalty specifications. Following a lengthy jury trial that concluded on October 14, 2010, McKelton was found guilty and sentenced to death. As part of its decision to impose the jury's recommended death sentence, the trial court stated, in pertinent part, the following:

> The evidence presented at trial was that on or about July 26, 2008, the defendant, Calvin S. McKelton and Germaine Lamar Evans, were present in the home of Attorney Margaret "Missy" Allen located in Fairfield, Ohio. The evidence was that the defendant and Missy Allen were engaged in a romantic relationship. Sometime during that day, Mr. McKelton and Ms. Allen argued and the defendant strangled the victim causing her death while Germaine Evans was present in the home. Mr. McKelton and Mr. Evans then drove her body to Schmidt Field in Cincinnati, Ohio where the body was dumped.

> The Cincinnati, Ohio Police Department opened a homicide investigation into Ms. Allen's death. During the course of the investigation, the Cincinnati homicide detectives developed Mr. McKelton as a suspect and became aware that Germaine Lamar Evans may have been a witness to the homicide and may have participated in the dumping of Ms. Allen's body.

> Approximately three days before the Evans' murder, the Cincinnati homicide detectives attempted to contact Mr. Evans by calling his sister Crystal Evans to obtain a DNA sample from him. Within three days of that phone call being made, Mr. Evans was murdered. There was extensive testimony by many witnesses, some voluntary and others involuntary, that Mr. McKelton murdered Germaine Lamar Evans to prevent him from being a witness against McKelton in the death of Margaret Allen.

> The evidence at trial was that Mr. Evans' body was found in a park area along stairs in a remote, unlit part of the park. Evans was murdered by a shot to the back of his head by a 40mm firearm. The jury convicted Mr. McKelton of both the murder of Margaret Allen and the aggravated murder with specifications of Germaine Lamar Evans.

{¶ 3} McKelton subsequently appealed from his conviction and death sentence to the

Ohio Supreme Court on December 27, 2010, raising numerous propositions of law spanning over three hundred pages. Although oral argument has since been completed, a decision on McKelton's direct appeal has yet to be released and the matter is still pending before the Ohio Supreme Court in *State v. McKelton*, No. 2010-2198.

{¶ 4} Nevertheless, although his direct appeal is still pending, on December 28, 2011, McKelton filed a timely petition for postconviction relief, which he then amended four times, raising a total of thirty-four grounds for relief. McKelton also filed a series of motions requesting leave to conduct discovery, as well as a request for investigative funds in order to procure a forensic ophthalmologist, a neuropsychologist and a substance abuse expert. After filing its answer to McKelton's postconviction relief petition, the state then filed a motion for summary judgment on March 20, 2012. Thereafter, on January 30, 2015, the trial court issued a decision denying McKelton's petition for postconviction relief without holding an evidentiary hearing. The trial court also denied McKelton's accompanying motions for discovery and investigative funds.

{¶ 5} McKelton now appeals from the trial court's decision, raising four assignments of error for review. For ease of discussion, McKelton's third assignment of error will be addressed out of order.

{¶ 6} Assignment of Error No. 3:

{¶ 7} THE TRIAL COURT ERRED IN DISMISSING MCKELTON'S POST-CONVICTION PETITION WHEN HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT A MINIMUM, AN EVIDENTIARY HEARING.

{¶ 8} In his third assignment of error, McKelton argues the trial court erred by denying his petition for postconviction relief without holding an evidentiary hearing. In support of this claim, McKelton alleges numerous instances of prosecutorial misconduct, ineffective assistance of trial counsel, various challenges to the trial court's rulings in regards to the

- 3 -

admission of evidence, the nondisclosure of witnesses, as well as arguments regarding his choice of counsel and change of venue, among others. According to McKelton, his petition for postconviction relief – a document that spans over one hundred pages with an additional one thousand plus pages of exhibits – demonstrated sufficient operative facts to establish substantive grounds for relief, thereby entitling him to conduct discovery, receive investigative funds and be provided with an evidentiary hearing. We disagree.

**Standard of Review for a Petition for Postconviction Relief**

{¶ 9} A postconviction proceeding is not an appeal of a criminal conviction, but rather, a collateral civil attack on a criminal judgment. *State v. Bayless*, 12th Dist. Clinton Nos. CA2013-10-020 and CA2013-10-021, 2014-Ohio-2475, ¶ 8, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). Initial petitions for postconviction relief are governed under R.C. 2953.21, which provides three methods for adjudicating the petition. *State v. Chamberlain*, 12th Dist. Brown No. CA2015-03-008, 2015-Ohio-2987, ¶ 5. Specifically, when a criminal defendant challenges his conviction through a postconviction relief petition, the trial court may (1) summarily dismiss the petition without holding an evidentiary hearing pursuant to R.C. 2953.21(C), (2) grant summary judgment on the petition to either party who moved for summary judgment pursuant to R.C. 2953.21(D), or (3) hold an evidentiary hearing on the issues raised by the petition pursuant to R.C. 2953.21(E). *State v. Francis*, 12th Dist. Butler No. CA2014-09-187, 2015-Ohio-2221, ¶ 10.

{¶ 10} "An evidentiary hearing is not automatically guaranteed each time a defendant files a petition for postconviction relief." *State v. Suarez*, 12th Dist. Warren No. CA2014-02-035, 2015-Ohio-64, ¶ 10. Rather, as noted by the Ohio Supreme Court, pursuant to R.C. 2953.21(C), "a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth

- 4 -

sufficient operative facts to establish substantive grounds for relief." *Calhoun* at paragraph two of the syllabus. Substantive grounds for relief exist where there was a denial or infringement of the petitioner's constitutional rights so as to render the judgment void or voidable. *State v. Clark*, 12th Dist. Warren No. CA2008-09-113, 2009-Ohio-2101, ¶ 8.

{¶ 11} "A trial court's decision to summarily deny a postconviction petition without holding an evidentiary hearing pursuant to R.C. 2953.21(C) will not be reversed absent an abuse of discretion." *State v. Simon*, 12th Dist. Butler No. CA2014-12-255, 2015-Ohio-2989, ¶ 11. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 34. A decision is unreasonable when it is "unsupported by a sound reasoning process." *State v. Abdullah*, 10th Dist. Franklin No. 07AP-427, 2007-Ohio-7010, ¶ 16, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). This court will not overrule the trial court's finding on a petition for postconviction relief where the finding is supported by competent and credible evidence. *State v. Mathes*, 12th Dist. Clermont No. CA2013-02-014, 2013-Ohio-4128, ¶ 11.

### Prosecutorial Misconduct

{¶ 12} Initially, McKelton alleges the trial court erred by denying his petition for postconviction relief because he was subject to numerous alleged instances of prosecutorial misconduct. McKelton's argument lacks merit.

{¶ 13} For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove the prosecutor's comments were improper and that they prejudicially affected the defendant's substantial rights. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. However, "[t]he focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor." *State v. Gray*, 12th Dist.

Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 56, citing *State v. Vanloan*, 12th Dist. Butler No. CA2008-10-259, 2009-Ohio-4461, ¶ 32. Therefore, "[p]rosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27, citing *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).

{¶ 14} In this case, under his third ground for relief, McKelton argues the state engaged in widespread misconduct due to the "highly-contested election for county prosecutor" at the time of his trial. In support of this claim, McKelton makes reference to several campaign websites and news articles documenting the efforts of two assistant prosecutors vying for the then open seat as Butler County's prosecutor. However, just as the trial court found, not only did neither of the two candidates actually obtain the open appointment, most of the alleged misconduct that supposedly occurred was either wholly unrelated to McKelton's trial or happened well-after McKelton had already been sentenced to death. Under these circumstances, it simply cannot be said that McKelton set forth sufficient operative facts to establish substantive grounds for relief that would entitle him to an evidentiary hearing on this issue. Therefore, the trial court did not err by denying McKelton's third ground for relief.

{¶ 15} Next, under his fifteenth and sixteenth grounds for relief, McKelton argues the state engaged in misconduct when it failed to provide his defense counsel with evidence that two witnesses were given special treatment on their respective drug related charges then pending in the United States District Court for the Southern District of Ohio in exchange for their testimony against McKelton at trial. According to McKelton, by failing to disclose this purported exculpatory and material evidence to his defense counsel, the state violated the principles outlined by the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

{¶ 16} In *Brady*, the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. However, as a rule, "undisclosed evidence is not material simply because it may have helped the defendant to prepare for trial." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 49. Rather, "[e]vidence suppressed by the prosecution is 'material' within the meaning of *Brady* only if there exists a 'reasonable probability' that the result of the trial would have been different had the evidence been disclosed to the defense." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 27, citing *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S.Ct. 1555 (1995). "'A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 129, quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985). The United States Supreme Court has since extended this rule to include evidence affecting a state witness's credibility. *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 29, citing *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763 (1972).

{¶ 17} Here, like the trial court before us, we find McKelton failed to provide any evidence demonstrating either witness received any special treatment as a direct result from their testimony at McKelton's trial. Moreover, besides his bare assertions to the contrary, we also find McKelton failed to provide any evidence that the state somehow knew or acquiesced to the witnesses receiving any special treatment in exchange for their testimony. In so holding, we note that McKelton is essentially asking this court to infer that the witnesses received special treatment for their testimony against him since the various charges against them were either reduced or dismissed.

{¶ 18} However, not only were both witnesses questioned regarding any potential motivation they may have had for testifying at trial, the record also reveals that both received

lengthy sentences in excess of ten years in prison. Again, under these circumstances, it simply cannot be said that McKelton set forth sufficient operative facts to establish substantive grounds for relief that would entitle him to an evidentiary hearing on this issue. Therefore, the trial court did not err by denying McKelton's fifteenth and sixteenth grounds for relief.

{¶ 19} Continuing, under his sixth, ninth, fourteenth and nineteenth grounds for relief, McKelton alleges the state engaged in prosecutorial misconduct by (1) adducing certain testimony from a witness regarding an injury she witnessed to Margaret Allen's eye, (2) procuring allegedly knowingly false testimony from Detective Keith Witherell regarding a letter McKelton wrote that the state claimed contained threats against witnesses, (3) introducing evidence that McKelton threatened in a phone call to "John Brown" the case, an apparent reference to a Hamilton County case in which the state claims the defendant was acquitted because witnesses either failed to show or recanted their pretrial statements due to threats, intimidation or outright bribery of witnesses, and (4) presenting "unreliable cell phone tower evidence and by using that faulty evidence as a basis to disparage "the credibility of an alibi witness."

{¶ 20} In addition, under his eighteenth and thirty-fourth grounds for relief, McKelton alleges the state engaged in further misconduct by (5) soliciting supposed false testimony from Detective David Gregory regarding another witness' unwillingness to testify due to intimidation and fear of McKelton, a claim McKelton also alleges violates the Confrontation Clause as found in the Sixth Amendment to the United States Constitution, and (6) by failing to conduct a conflict check regarding the state's non-disclosed witnesses to determine whether those witnesses had ever been represented by his then retained counsel, Richard Goldberg. McKelton's claims are all barred on the basis of the doctrine of res judicata.

{¶ 21} It is well-established that a petition for postconviction relief does not provide a

petitioner with a second opportunity to litigate his conviction. *State v. Rose*, 12th Dist. Butler No. CA2012-03-050, 2012-Ohio-5957, ¶ 15-16. In turn, a trial court may dismiss a postconviction relief petition on the basis of the doctrine of res judicata. *State v. Blanda*, 12th Dist. Butler No. CA2013-06-109, 2014-Ohio-2234, ¶ 20. "Under the doctrine of res judicata, a defendant cannot raise an issue in a postconviction petition if he or she raised or could have raised the issue at the trial that resulted in that judgment of conviction or on an appeal from that judgment." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, ¶ 92, citing *State v. Szefcyk*, 77 Ohio St.3d 93, 96 (1996) and *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus.

{¶ 22} Here, our review of the record indicates McKelton could have raised all of these alleged instances of prosecutorial misconduct in his direct appeal to the Ohio Supreme Court. In so holding, we note that McKelton actually did allege claims of prosecutorial misconduct as part of his direct appeal under his eighth and seventeenth propositions of law. *E.g.*, *State v. Jackson*, 11th Dist. Trumbull No. 2013-T-0103, 2014-Ohio-7, ¶ 46 (res judicata applied to a petition for postconviction relief where same issue had been raised in direct appeal then pending with the Ohio Supreme Court); *See also State v. Brinkley*, 6th Dist. Lucas No. L-04-1066, 2004-Ohio-5666, ¶ 10.

{¶ 23} Again, res judicata applies to any issue that either has been raised or could have been raised on direct appeal, including a claim alleging prosecutorial misconduct. *State v. Zych*, 12th Dist. Clermont No. CA97-02-012, 1997 WL 664399, *3 (Oct. 27, 1997) (res judicata applied to bar claim of prosecutorial misconduct where "record indicates that appellant could have raised his objections to the prosecutor's allegedly improper conduct in his direct appeal to this court, but that appellant failed to do so"). Therefore, just as the trial court found, the doctrine of res judicata applies to bar McKelton's prosecutorial misconduct claims as alleged in his sixth, ninth, fourteenth, eighteenth, nineteenth and thirty-fourth

grounds for relief. Accordingly, the trial court did not err by denying any of McKelton's grounds for relief alleging prosecutorial misconduct.

**Ineffective Assistance of Counsel**

{¶ 24} McKelton also alleges the trial court erred by denying his petition for postconviction relief because he was subject to numerous alleged instances of ineffective assistance of counsel. We again find McKelton's argument lacks merit.

{¶ 25} Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. In turn, in a postconviction petition asserting ineffective assistance of counsel, the petitioner must first show that "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Widmer*, 2013-Ohio-62 at ¶ 132. A petitioner's failure to satisfy either prong is fatal to an ineffective assistance of counsel claim. *State v. Ayers*, 12th Dist. Warren Nos. CA2010-12-119 and CA2010-12-120, 2011-Ohio-4719, ¶ 49. A trial court's decision resolving a postconviction claim of ineffective assistance of counsel will be upheld absent an abuse of discretion when the trial court's finding is supported by competent and credible evidence. *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 14.

{¶ 26} Here, under his twentieth, twenty-first, twenty-third through twenty-ninth and thirty-first through thirty-third grounds for relief, McKelton argues he received ineffective assistance of counsel during the sentencing phase of his trial when his trial counsel allegedly failed to (1) conduct a full investigation into his history and familial background, (2) obtain his children's services and hospital records, (3) have him evaluated by a psychologist, (4) contact a number of his relatives, family members and friends who would have been willing to testify on his behalf, (5) illicit "thorough and accurate" testimony from his mother, and (6)

procure an expert in "juvenile institutions" and a mitigation specialist. After a thorough review of the record, we find these claims are also barred by the doctrine of res judicata.

{¶ 27} As this court has stated previously, res judicata is a proper basis for dismissing a petition for postconviction relief "when the defendant, represented by new counsel on direct appeal, fails to raise therein the issue of competent trial counsel and the issue could fairly have been determined without resort to evidence outside the record." *State v. Sturgill*, 12th Dist. Clermont Nos. CA2014-01-003 and CA2014-07-049, 2014-Ohio-5082, ¶ 13. In this case, McKelton's various ineffective assistance of counsel claims all arise from his trial counsel's alleged failures during the sentencing phase of his trial. In turn, McKelton should have been well aware of these potential issues prior to filing his direct appeal with the Ohio Supreme Court.

{¶ 28} Moreover, similar to his prosecutorial misconduct claim addressed above, we again note that McKelton actually did allege claims of ineffective assistance of counsel as part of his direct appeal to the Ohio Supreme Court under his fifteenth and sixteenth propositions of law. Therefore, just as the trial court found, the doctrine of res judicata once again applies to bar McKelton's ineffective assistance of counsel claims as alleged in his twentieth, twenty-first, twenty-third through twenty-ninth and thirty-first through thirty-third grounds for relief. Accordingly, the trial court did not err by denying McKelton's grounds for relief alleging ineffective assistance of counsel.

### Other Constitutional Grounds for Relief

{¶ 29} In addition to his claims alleging prosecutorial misconduct and ineffective assistance of trial counsel, McKelton has raised several other grounds for relief alleging a variety of claims under both the United States Constitution and Ohio Constitution. For ease of discussion, McKelton's various claims will be addressed out of order and similar issues will be addressed together.

*Change of Venue*

**{¶ 30}** Under his second ground for relief, McKelton argues the trial court erred by dismissing his petition for postconviction relief because Butler County was not the proper venue to bring the various charges against him. However, although initially raising this issue with the trial court, McKelton did not include this challenge as part of his direct appeal to the Ohio Supreme Court. Therefore, as the trial court found, because this argument could have been raised on direct appeal, McKelton's argument alleging an improper venue is also barred by the doctrine of res judicata. *E.g., State v. Morrar*, 12th Dist. Madison No. CA2013-08-027, 2014-Ohio-3663, ¶ 8 (finding petitioner's argument regarding improper venue raised as part of his petition for postconviction relief was barred by res judicata where petitioner did not challenge venue on direct appeal); *See also State v. Harris II*, 2d Dist. Champaign No. 2013 CA 10, 2013-Ohio-4818, ¶ 12. Accordingly, the trial court did not err by denying McKelton's second ground for relief.

*Counsel of Choice and the Appointment of New Counsel*

**{¶ 31}** Next, under his fourth and twenty-second grounds for relief, McKelton argues the trial court erred by dismissing his petition for postconviction relief because he was denied his "counsel of choice" when his retained counsel, Richard Goldberg, was forced to withdraw due to a conflict of interest. However, not only do we find McKelton's claims are once again barred by the doctrine of res judicata, as noted by the United States Supreme Court, the "right to choose one's own counsel is circumscribed in several important respects," and does not extend to an attorney laboring under an actual conflict of interest. *Wheat v. United States*, 486 U.S. 153, 159, 162, 108 S.Ct. 1692 (1988); *State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 9 ("[a] defendant does not have the right to be represented by * * * an attorney with a conflict of interest").

**{¶ 32}** In so holding, we note that although McKelton's retained counsel was forced to

- 12 -

withdraw, the trial court had already appointed two additional attorneys qualified by the Ohio Supreme Court to handle death penalty cases to represent him. As noted by the trial court, "[t]he two court appointed attorneys participated from the beginning in all aspects of the defense of McKelton." The record clearly supports the trial court's finding. Therefore, based on the facts and circumstances here, we find the trial court did not err by denying McKelton's fourth and twenty-second grounds for relief.

*Nondisclosure of Witnesses and Crim.R. 16(B)(1)(e)*

{¶ 33} Furthermore, under his fifth ground for relief, McKelton argues the trial court erred by dismissing his petition for postconviction relief because the trial court violated his due process rights through its application of Crim.R. 16(B)(1)(e) regarding the state's alleged nondisclosure of witnesses prior to trial. McKelton's claim, however, is likewise barred by the doctrine of res judicata as he has raised substantially similar arguments as part of his direct appeal to the Ohio Supreme Court in his first and second propositions of law. It is well-established that "[r]es judicata also implicitly bars a petition from 'repackaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." *State v. Tolliver*, 10th Dist. Franklin No. 14AP-170, 2014-Ohio-4824, ¶ 19, citing *State v. Hessler*, 10th Dist. Franklin No. 01AP-1011, 2002-Ohio-3321, ¶ 3. Therefore, the trial court did not err by denying McKelton's fifth ground for relief.

*Admission of Evidence and Confrontation Clause*

{¶ 34} Under his seventh, eighth, tenth through thirteenth and seventeenth grounds for relief, McKelton argues the trial court erred by dismissing his petition for postconviction relief because it permitted the admission of "unreliable and inflammatory evidence" at trial that he was "deprived of the opportunity to defend against." McKelton also alleges the trial court erred by "restricting the use of impeachment evidence," thereby violating the Confrontation Clause as found in the Sixth Amendment to the United States Constitution. McKelton's

various claims, however, all involve evidentiary issues that occurred during trial that could have been raised as part of his direct appeal to the Ohio Supreme Court. In fact, in reviewing his appellate brief submitted to the Ohio Supreme Court, McKelton did raise these same or substantially similar claims as part of his direct appeal under his fourth, fifth, sixth, seventh, ninth, tenth and eleventh propositions of law. Therefore, as these claims are also all barred by the doctrine of res judicata, the trial court did not err by denying McKelton's various grounds for relief regarding these evidentiary issues.

*Cumulative Error*

{¶ 35} Finally, under his thirtieth claim for relief, McKelton argues the trial court erred by dismissing his petition for postconviction relief given the cumulative effective of the trial court's numerous errors throughout his trial. McKelton raised this same issue as part of his direct appeal under his twenty-first proposition of law. Regardless, based on the record before this court, McKelton has failed to demonstrate any violation of his rights that led to his conviction and death sentence. Therefore, the trial court did not err by denying McKelton's thirtieth ground for relief alleging cumulative error.

{¶ 36} In light of the foregoing, having found no merit to any of his various arguments raised herein, McKelton's third assignment of error is overruled.

{¶ 37} Assignment of Error No. 1:

{¶ 38} THE TRIAL COURT ERRED WHEN IT DENIED THE POST-CONVICTION PETITION WITHOUT FIRST ALLOWING MCKELTON TO CONDUCT DISCOVERY.

{¶ 39} In his first assignment of error, McKelton argues the trial court erred by denying his petition for postconviction relief without first allowing him to conduct discovery. We disagree.

{¶ 40} As noted above, a postconviction proceeding is not an appeal of a criminal conviction, but rather, a collateral civil attack on the judgment. *Bayless*, 2014-Ohio-2475 at ¶

8, citing *Calhoun*, 86 Ohio St.3d at 281. In turn, because postconviction relief is not a constitutional right, "it affords a petitioner no rights beyond those granted by the controlling statute," in this case, R.C. 2953.21. *State v. Lawson*, 12th Dist. Clermont No. CA2011-07-056, 2012-Ohio-548, ¶ 16.

{¶ 41} As this court recently noted, R.C. 2953.21 "'does not contain a provision entitling a post-conviction petitioner to discovery during the post-conviction process[.]'" *State v. Osie*, 12th Dist. Butler No. CA2014-10-222, 2015-Ohio-3406, ¶ 31, quoting *State v. Jackson*, 3d Dist. Allen No. 1-04-31, 2004-Ohio-5350, ¶ 23. Nevertheless, discovery may be warranted when the petitioner sets forth operative facts that demonstrate a substantive claim for relief. *Lawson* at ¶ 18. A petitioner sets forth operative facts by attaching documentary evidence that is outside the record, which if true, constitutes a constitutional error in his case. *State v. Leonard*, 157 Ohio App.3d 653, 2004-Ohio-3323, ¶ 36 (1st Dist.). The granting or overruling of a discovery motion rest within the sound discretion of the trial court. *State v. Stojetz*, 12th Dist. Madison No. CA2009-06-013, 2010-Ohio-2544, ¶ 75.

{¶ 42} Here, because McKelton failed to set forth sufficient operative facts to establish substantive grounds for relief, the trial court did not err by denying McKelton's petition for postconviction relief. Simply stated, the trial court properly determined that McKelton's various claims alleging prosecutorial misconduct, ineffective assistance of counsel, as well as other various purported constitutional violations, all lacked merit or were barred by the doctrine of res judicata. Therefore, based upon this finding, we likewise find no error in the trial court's decision to deny McKelton's motion seeking to conduct discovery in this matter. Accordingly, McKelton's first assignment of error is also without merit and overruled.

{¶ 43} Assignment of Error No. 2:

{¶ 44} THE TRIAL COURT ERRED WHEN IT DENIED MCKELTON'S MOTION FOR FUNDS TO EMPLOY EXPERTS.

{¶ 45} In his second assignment of error, McKelton argues the trial court erred by denying his motion seeking investigative funding in order to procure a forensic ophthalmologist, a neuropsychologist and substance abuse expert.  However, similar to our decision as it relates to his motion seeking to conduct discovery, because nothing in R.C. 2953.21 provides a right for investigative funding to a petitioner seeking postconviction relief, the trial court did not err by denying McKelton's request for funds to employ these experts. *E.g., State v. Hoop*, 12th Dist. Brown No. CA2004-02-003, 2005-Ohio-1407, ¶ 7 (trial court did not err in denying request for investigative services in postconviction relief proceeding); *State v. Stedman*, 8th Dist. Cuyahoga No. 83531, 2004-Ohio-3298, ¶ 35-36 (trial court did not err in denying request for private investigator and forensics expert in postconviction relief proceeding).  As this court has stated previously, a petitioner "has no right to funds for expert assistance to pursue discovery until it is determined an evidentiary hearing is warranted." *State v. Cowans*, 12th Dist. Clermont No. CA98-10-090, 1999 WL 699870, *9 (Sept. 7, 1999).  Therefore, because an evidentiary hearing is not warranted in this case, McKelton's second assignment of error is likewise without merit and overruled.

{¶ 46} Assignment of Error No. 4:

{¶ 47} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED MCKELTON RELIEF WITHOUT AFFORDING HIM THE NECESSARY DUE PROCESS TO MEET HIS BURDEN.

{¶ 48} In his fourth assignment of error, McKelton argues Ohio's statutory scheme providing for postconviction relief is unconstitutional in that it does not provide him with a "meaningful system to have his constitutional challenges heard."  However, this court has already determined that "[t]he statutory procedure for postconviction relief constitutes an adequate corrective process." *State v. Lindsey*, 12th Dist. Brown No. CA2002-02-002, 2003-Ohio-811, ¶ 13.  Other districts have held the same.  *See State v. Conway*, 10th Dist.

Franklin No. 12AP-412, 2013-Ohio-3741, ¶ 63; *State v. Trimble*, 11th Dist. Portage No. 2007-P-0098, 2008-Ohio-6409, ¶ 108; *State v. Frazier*, 6th Dist. Lucas No. L-07-1388, 2008-Ohio-5027, ¶ 70; *State v. Elmore*, 5th Dist. Licking No. 2005-CA-32, 2005-Ohio-5940, ¶ 143-149. We see no reason to deviate from this prior precedent and therefore continue to find Ohio's statutory scheme providing for postconviction relief is constitutional. *State v. Lawson*, 2014-Ohio-3554, ¶ 43. Therefore, McKelton's fourth assignment of error is without merit and overruled.

{¶ 49} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.